Linda **FRESHOUR**, Petitioner,

v.

Bob **TURNER**, Sheriff, Oklahoma County, Oklahoma, Respondent.

No. A–17398.

Court of Criminal Appeals of Oklahoma.

April 14, 1972.

T. Hurley Jordan, Asst. Public Defender, Oklahoma County, for petitioner.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., for respondent.

SIMMS, Judge:

This is an original proceeding wherein petitioner alleges she is being illegally proceeded against in a criminal action in the District Court of Oklahoma County as an adult without having been previously certified by the Juvenile Division of that Court in accordance with 10 O.S.1971, § 1112. The date of the alleged offense was March 28, 1972, and on said date, petitioner was a seventeen-year-old female.

By way of background, the United States Court of Appeals, Tenth Circuit, in Lamb v. Brown, 456 F.2d 18, struck down as unconstitutional 10 O.S.Supp.1969, § 1101 (a) because of age discrimination between the sexes. The date of this opinion, it must be emphasized, was March 16, 1972, and before the alleged criminal offense committed by petitioner.

On March 27, 1972, in Schaffer v. Green, District Judge, Okl.Cr., 496 P.2d 375, again prior to the alleged offense in this case, we declared unconstitutional 10 O.S.1971, § 1101A, for the identical reasons specified by the Tenth Circuit in Lamb v. Brown, supra, and for the additional reasons as spelled out in Schaffer v. Green, supra. It should be noted the definition of "delinquent child" in 10 O.S.1971, § 1101A was verbatim to the unconstitutional provisions in 1101(a).

The net effect of the two decisions above cited was to leave the Children's Code devoid of any age definition of "child" or "delinquent child," or any legally established age at which a person must have a hearing in Juvenile Division of the District Court before being certified for adult proceedings.

Title 10, O.S.1971, § 1112(b) provides: "If a child is charged with delinquency as a result of an offense which would be a crime if committed by an adult, the court, after full investigation and a preliminary hearing, may in its discretion continue the juvenile proceeding, or *it may certify such child capable of knowing right from wrong, and to be held accountable for his acts,* for proper criminal proceedings to any other division of the court which would have trial jurisdiction of such offense if commited by an adult." (Emphasis Added)

■ Therefore, by the very provisions of the Children's Code, the test to be applied in ascertaining whether the child will remain under the provisions of the Code or be certified to be proceeded against as an adult is the test of knowing right from wrong and accountability.

As we pointed out in *Schaffer,* supra, the only remaining non-discriminatory, and therefore constitutional, statute within our entire code pertaining to the age of presumed accountability was 21 O.S.1971, § 152, which provides in part:

"All persons are capable of committing crimes, except those belonging to the following classes:

\*    \*    \*    \*    \*    \*

2. Children over the age of seven years, but under the age of fourteen years, in the absence of proof that at the time of committing the act or neglect charged against them, *they knew its wrongfulness."* (Emphasis Added)

It logically follows that the legal yardstick used to determine whether or not a person shall be prosecuted as an adult under either 21 O.S.1971, § 152 or 10 O.S. 1971, § 1112, is knowledge of wrongfulness of the act.

A careful study of the Children's Code, Title Ten, reveals that 10 O.S.1941, § 101, which was repealed in 1968, and superceded by 10 O.S.Supp.1968, § 1101 et seq., defined delinquent child to be "any male child under the age of sixteen years and any female child under the age of eighteen years who violates any law, [etc.]" However, prior to 1941, the definition of "delinquent child" included *any* child under the age of 16 years.

In apparently construing both the provisions in Title 21 and Title 10, at a time when there was no discriminatory provisions, this Court said in Ex parte Barton, et al., 32 Okl.Cr. 41, 239 P. 944 (1925):

"In this state a minor over the age of 16 years is presumed to be responsible for his criminal acts. The time of infancy is usually divided into three parts, during each of which a different presumption as to criminal responsibility prevails. Children under the age of 7 years are conclusively presumed to be incapable of committing crime; children over the age of 7 years and under the age of 16 years are presumed to be incapable of committing crime, except where it is affirmatively shown in a juvenile proceeding that the child knew or comprehended the wrongfulness of his act or acts. *Over the age of 16 the infant is presumed to know the consequences and import of his criminal acts, and to be responsible therefor.* In some cases this may be a rebuttable presumption, but the burden of proving incapacity during this period is on the infant defendant." (Emphasis Added)

■ The conclusion is therefore inescapable that legislation fixing arbitrary ages at which infants must undergo a Juvenile Court hearing to determine if that infant knew the wrongfulness of his act, as well, fixes an age where the infant is presumed to be responsible for criminal acts as an adult would be.

Petitioner asserts that even though she was 17 years of age at the time of commission of the alleged offense on March 24, 1972, she should receive the benefits of Enrolled House Bill Number 1705, amending 10 O.S.1971, § 1101, which became law on April 4, 1972, at the hour of 4:00 p. m. Enrolled House Bill Number 1705 defines the term "child" to mean any person under the age of eighteen years.

■ We note there is nothing contained within either the title to the act or within House Bill Number 1705 itself making the particular act retroactive. It is well established that unless a legislative enactment by its very own language is to apply retroactively, it can apply prospectively only. Acme Oil & Gas Co., Limited, et al. v. Cooper, Judge, 168 Okl. 346, 33 P.2d 191; Baker & Strawn v. Magnolia Petroleum Co., 124 Okl. 94, 254 P. 26, 82 C.J.S. Statutes § 319.

Conceding, however, that generally speaking, such a statute might apply to proceedings pending in District Court before trial, we need only observe the clear and unequivocal language of 10 O.S.1971, § 1112:

"If, during the pendency of a criminal or quasi-criminal charge against any person, it shall be ascertained that the person was a *child at the time of committing the alleged offense,* the court shall transfer the case, together with all the papers, documents and testimony connected therewith, to the juvenile division of the court." (Emphasis Added)

■ At the time petitioner is alleged to have committed the offense with which she stands charged, the sole constitutional and non-discriminatory statute governing the age at which infants were legally presumed to know the wrongfulness of a criminal act was 21 O.S.1971, § 152. Petitioner, therefore, being above the age of 14 at the time of commission of the alleged offense, is not therefore entitled to invoke

the provisions of Enrolled House Bill Number 1705, and is not legally entitled to a formal adjudication in the Juvenile Division of District Court before she can be prosecuted as an adult.

We, therefore, conclude the following:

(1.) An infant who had committed a criminal act prior to 1941, and had not reached his sixteenth birthdate on the date of commission of the offense, was entitled to a certification hearing in Juvenile Court. If prior to 1941, he had passed his sixteenth birthdate at the time of commission of the alleged offense, no Juvenile Division proceedings are required.

(2.) An infant who commited a criminal act between 1941 and March 16, 1972, and had not reached his fourteenth birthdate on the date of the commission of the alleged offense must have a certification hearing in Juvenile Court to determine if he or she should be held accountable for his or her acts. If, between 1941 and March 16, 1972, they had passed their fourteenth birthdate at the time of commission of the criminal act, it is legally presumed they knew the wrongfulness of their acts and no juvenile proceedings are required.

(3.) An infant who committed a criminal act between March 16, 1972 and April 4, 1972, at the hour of 4:00 p. m. and had not reached his or her fourteenth birthdate on the date of the commission of the alleged offense must have a certification hearing in Juvenile Court to determine if he or she should be held accountable for his or her acts. If between March 16, 1972 and 4:00 p. m., April 4, 1972, they have passed their fourteenth birthdate at the time of commission of the criminal act, it is legally presumed they knew the wrongfulness of their acts and no juvenile proceedings are required.

(4.) An infant who commits a criminal act after the hour of 4:00 p. m., April 4, 1972, and has not reached his eighteenth birthdate at the time of commission of the offense, must have the statutory hearing in Juvenile Division. If he passed his eighteenth birthdate at the time of the criminal act, it is legally presumed that he knew the wrongfulness of his act and no Juvenile Division proceedings are required.

Notwithstanding the popularity or unpopularity of the conclusions reached in this opinion, simply stated, it is the statutory law of the State of Oklahoma. The establishment of an age at which an infant is presumed to be accountable for his criminal acts is a matter of public policy within this state. The Legislature, within whose exclusive province it is to enact laws governing public policy, addressed itself to the subject, and when the Legislature had considered the subject, this Court is, by law, powerless to modify or extend that statutory enactment in matters which are criminal in nature. 22 O.S.1971, § 9.

By reason of the foregoing, the application for the Writ of Habeas Corpus is denied. Writ denied.

BUSSEY, P. J., concurs.

BRETT, Judge (dissents).

I must respectfully dissent to this decision for the same concluding reason I stated in Schaffer v. Green, supra. I believe this Court not only has the power to administer the law, but it also has the duty to say what the law is when a "legislative void" occurs, as referred to by the majority decision in Schaffer, when Judge Bussey recited: "The responsible legislative leadership of both the House and the Senate of the Oklahoma State Legislature have galvanized into action, during the closing days of the session, to fill the legislative void created by Lamb v. Brown, . . . ."

Likewise, I refuse to believe that appellate judges are expected to sit equipped with "blinders" as an obstruction to sight or discernment, as were army mules. Nor, are we so bound by the doctrine of "stare decisis" that we must close our eyes to the realities of life as they presently exist.

I repeat again that the United States Court of Appeals in the Lamb decision correctly held that the Oklahoma Statute did not comply with the equal protection clause of the Fourteenth Amendment to the United State Constitution. I again state my view to be that the proper action for this Court to have taken in Schaffer was for this Court to have given the male juveniles the benefit of the decision, and to have held that males under eighteen years of age were juveniles, subject to certification by the Juvenile Court. For this Court to reach back to 1910, for the definition of a child, is an effort to turn time back, completely disregarding the facts of life as they exist today. In 1910, a fourteen year old person was free to work in any phase of industry in which he could find employment. Today, a boy cannot even be legally employed to sack groceries until he reaches fifteen years of age. Most other phases of business or industry is proscribed from employing anyone under eighteen years of age, under the child labor laws. The same was true in 1925, when Ex parte Barton, et al., supra, was decided.

With reference to the instant matter, Linda Freshour committed the alleged offense on March 28th. On April 4th the Juvenile Court dismissed her application to be considered as a juvenile, being seventeen years of age; and she was returned to the district judge. The petition filed in this Court states:

". . . Judge Hunter of the Juvenile Division dismissed the application for want of jurisdiction and immediately thereafter petitioner was taken before Judge Mills of the District Court who arraigned her as an adult and set her preliminary hearing on the 19th day of April, 1972, . . . ."

The petition was filed in this Court on April 6th. Counsel for petitioner correctly argued before this Court that the purpose, intent and function of the juvenile laws are to protect the juvenile. Originally the theory of the juvenile laws was that the child was to be considered society's child rather than an enemy of society. Theoretically then, if the child belonged to society and was not the enemy of society, then the interests of the state and the interests of the child were not in conflict but coincided. This basic theory has not changed, except to assure that a child receives "due process of law" in all juvenile hearings. See: In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

It therefore appears to this writer in the instant case, insofar as petitioner has not been granted a preliminary examination, nor has she waived such, that the district court—as a trial court—did not have jurisdiction of petitioner when the alleged arraignment occurred; nor does that trial court now have jurisdiction to conduct a trial for petitioner. It appears to this writer that jurisdiction of the district court, as a trial court, does not become fixed until after the preliminary examination has been conducted, or has been waived. See: Nicodemus v. Dist. Court, Okl. County, Okl.Cr., 473 P.2d 312 (1970). Therefore, since H.B. 1705 was executed by the Governor at four o'clock on April 4th, this Court should hold that the seventeen year old girl should receive the benefits of that law. The proper administration of justice dictates that action, if nothing else. This Court, and all other courts, are charged with the fundamental function of properly administering justice. In the instant case, the Honorable Judge Mills recognized that the petitioner is a juvenile when he directed the Sheriff to *segregate her in the county jail*. Everybody seems to recognize the fact that she is a juvenile; and they discuss the distastefulness of the action; and they recite that the action is personally repugnant to them, but because of tradition and the veil of separation of powers prevents any justifiable action to be taken by this

Court. I do not believe that theory, and refuse to subscribe to it. When a legislative void is created, it is the duty of the courts to say what the law is, until the legislature cures that defect. That is how the common law was created.

I would hold that the petitioner must be remanded to the juvenile division for a hearing to determine whether or not she should be certified to stand trial as an adult. How can the state, or society, be hurt?

I therefore respectfully dissent to this decision.

BUSSEY, Presiding Judge (specially concurring):

I concur with the opinion of Judge Simms which sets forth with great clarity the only possible conclusion and application of the statutes of the State of Oklahoma relating to the age of criminal responsibility which can be arrived at without abrogating the doctrine of separation of powers.

When the Circuit Court of Appeals overruled Judge Brett's opinion in Lamb v. State, Okl.Cr., 475 P.2d 829, it was unnecessary to revert to the common law, since there existed valid and unrepealed legislation determining the age of criminal responsibility—21 O.S. § 152. The "void" referred to in Schaffer v. Green, supra, related to the uncertainty that existed in the minds of some of the trial judges as to what duly enacted legislative statute controlled. In *Schaffer* it was suggested that the responsibility for making any change in the existing law rested with the Legislature and they fulfilled their obligation by enacting the provisions of H.B. 1705, which, by its express terms, was not intended to apply retroactively.

Judge *Brett's* statement that "I refuse to believe that appellate judges are expected to sit equipped with 'blinders' as an obstruction to sight or discernment, as were army mules" brings to mind Matthew Henry's quotation: "None so blind as those that will not see."