521 P.2d 1000

**STATE of Arizona, Appellee,**

v.

**Tommy LEMON, Appellant.**

**No. 2697.**

Supreme Court of Arizona,
In Banc.
May 1, 1974.
Rehearing Denied June 4, 1974.

Gary K. Nelson, Atty. Gen., Phoenix, by Howard L. Fell, Asst. Atty. Gen., Tucson, for appellee.

Albert R. Gamble, Tucson, for appellant.

STRUCKMEYER, Justice.

Appellant was convicted of armed robbery after a trial before the court sitting wtihout a jury. From the conviction and a denial of his motion to quash the indictment, he appeals. Judgment affirmed.

On the evening of April 29, 1972, appellant and four companions were at a park where they met three individuals who were interested in purchasing marijuana. One of appellant's group, acting as spokesman, said that they would be willing to sell the marijuana if the purchasers would follow them to another location. When the two cars arrived at a deserted side street, appellant and two others, Mike Watson and Gary Thompson, left their car and approached the three victims, while two females remained inside the car. Watson opened the trunk, presumably to get mari-

juana, but instead pulled a gun on the victims.

One of the victims, Mike Fass, fled, but another, Mike Layton, was robbed of $350.00. Appellant, the other suspects and the two girls left the scene in their car but were pursued by the victims. During this chase, appellant fired a number of shots into the air with the gun in order to frighten his pursuers.

For his first ground of appeal, appellant urges that there was insufficient evidence before the trial court to convict him of armed robbery. It is his position that he was only a bystander and not a participant.

■■■ In considering whether a verdict is contrary to the evidence or is not supported by sufficient evidence, we do not decide whether an appellate court would arrive at the same verdict as the trier of fact. Rather, the question is whether there is competent evidence to support the conclusions reached. State v. French, 104 Ariz. 359, 453 P.2d 505 (1969); State v. Norgard, 103 Ariz. 381, 442 P.2d 544 (1968).

By A.R.S. § 18–139:

"All persons concerned in the commission of a crime whether it is a felony or a misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, * * * are principals in any crime so committed."

On the evening of April 29, 1972, appellant was wearing a cast on his right foot which extended up to just below the knee, causing his pant leg to split. He was easily identifiable to all the victims who testified to that effect at the trial. Joe Parker, one of the victims, testified:

"Q. Were you able to see what was happening with Mike Layton at this time?

A. They were going through his pockets on the other side of the car.

Q. Do you remember who specifically was going through his pockets?

A. The person who had the cast on that night."

And again under cross-examination, Parker testified:

"Q. Are you testifying, sir, that you specifically saw Tommy Lemon. turn Layton's pockets inside out?

A. Yes."

Although Parker was subjected to rigorous cross-examination and although he admitted to difficulties in watching Layton while a gun was pointed at his face, the testimony is plainly relevant to support the conclusion that appellant participated in the offense as charged.

Moreover, Michael Layton testified on direct examination:

"Q. Okay, was anything happening to you?

A. Yes, my pockets were being gone through.

Q. Who was this being done by?

A. Lemon.

Q. How do you know Lemon was doing it?

A. He had a cast on his foot.

Q. Was there ever more than one person that went through your pockets?

A. No, not that I know of."

And on cross-examination he said:

"Q. Are you sure, then, that you knew where Lemon was at?

A. Yes. He was behind me because when he began taking my wallet, I seen the cast on his foot."

As his second issue for appeal, appellant asserts that he was denied due process of law because the indictment was brought three months after the date of the alleged commission of the offense. Appellant claims not only a deprivation of his Fifth and Fourteenth Amendment right to due process of law, but of his Sixth Amendment right to a speedy trial.

Appellant was arrested on April 29, 1972, the evening of the incident. On July

13, 1972, two and one-half months later, the Grand Jury returned an Indictment. The record shows that until June 8, 1972, appellant, age 17, was under the jurisdiction of the juvenile court system. On that date, the judge presiding in the juvenile court ordered that appellant be transferred to the superior court for such further prosecution as an adult. Appellant argues that is is presumed that he was unable to avail himself of evidence which might otherwise have been available to him by this delay.

In United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the Supreme Court of the United States dealt with a claimed deprivation of due process caused by a lengthy (38 months) pre-indictment delay. There, appellees (defendants) were urging that a Court of Appeals decision be affirmed which quashed the indictment. Justice White, author of the majority opinion, rejected appellees' argument and reversed the Court of Appeals, saying:

"No actual prejudice to the conduct of the defense is alleged or proved, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them. Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial . . . " 404 U.S. 307, 325–326, 92 S.Ct. 455, 466, 30 L.Ed.2d 468, 482.

■ The statute of limitations for armed robbery in Arizona requires that an indictment be filed within five years after the commission of the offense. A.R.S. § 13–106(B). Appellant has not pointed to any example of possible prejudice either in hindering his preparation for a defense or by impairment of his or any other witness' memory at the trial. The delay was not for harassment of appellant; rather, it was due to the proceedings in juvenile court which had jurisdiction of appellant pursuant to A.R.S. § 8–202(D), Added Laws 1970.

While appellant complains of the two- and a half-month period of delay between the alleged commission of the offense and the indictment and arrest pursuant thereto, he does not claim that the period between the indictment and trial deprived him of his Sixth Amendment right to a speedy trial. If we apply the four-pronged balancing test of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and State v. Brannin, 109 Ariz. 525, 514 P.2d 446 (1973), it is clear that appellant has not been denied a speedy trial. First, the delay was not inordinately long. Second, the reason for the delay was a legitimate one, and not a part of a plan by the State to prejudice the appellant. Third, although appellant moved to quash the indictment because of an asserted denial of the right to a speedy trial, he waived the 60-day trial period at his arraignment. Again, on November 30, 1972, appellant made a motion for continuance, requesting that the trial be set still further in the future. Finally, as we have previously stated, was are not aware of any prejudice in fact resulting from any delay in the proceedings.

We therefore conclude that appellant was neither deprived of his Fourteenth Amendment right to due process of law, nor the Sixth Amendment right to a speedy trial.

As his final issue, appellant claims that he was denied the equal protection of the laws because he was prosecuted in superior court although a juvenile at the time of the incident. He argues that Article 6, § 6 of the Arizona Constitution, A.R.S., is too broad, thereby creating arbitrary classifications as to which juveniles may be prosecuted in superior court.

The relevant portion of Article 6, § 6 is as follows:

"The superior court shall have exclusive original jurisdiction in all proceed-

ings and matters affecting dependent, neglected, incorrigible, or delinquent children, or children accused of crime, under the age of eighteen years. The judges of said courts must hold examinations in chambers of all such children concerning whom proceedings are brought, in advance of any criminal prosecution of such children, and shall have the power, in their discretion, to suspend criminal prosecution for any offenses that may have been committed by such children. The powers of said judges to control such children shall be as prescribed by law."

Rule 14, Juv. Ct. Rules of Procedure, 17A A.R.S. states:

"Rule 14. Transfer Hearing; Order

(a) The transfer hearing shall include evidence of the offense alleged, unless waived, and of the transfer investigation report. At the conclusion of the transfer hearing, the court shall determine whether an offense has been committed and that probable cause exists to believe that the child committed the offense alleged. If the court finds such probable cause or evidence of probable cause has been waived, upon its own motion or the motion of any interested party, it may order, in addition to the transfer investigation, an investigation including a mental and physical examination of the child, to be made by a public or private agency, or by a person qualified to make such examinations.

(b) The court may transfer the action for criminal prosecution to the appropriate court having jurisdiction of the offense if the court finds probable cause and reasonable grounds to believe that:

(1) The child is not amenable to treatment or rehabilitation as a delinquent child through available facilities; and

(2) The child is not commitable to an institution for mentally deficient, mentally defective or mentally ill persons; and

(3) The safety or interest of the public requires that the child be transferred for criminal prosecution.

(c) Upon such transfer the juvenile court shall state the reasons therefor by minute entry or written order and the child shall thereupon be transferred to the custody of an appropriate law enforcement officer, released on bail, if the offense is bailable, or released upon his own recognizance.

(d) If the action is not transferred, the judge shall proceed to hear and dispose of the action or assign the hearing to another judge, court commissioner or referee."

The rule sets forth specific criteria to be applied if a juvenile is transferred to adult court for prosecution, and requires the judge of the juvenile court to list reasons for a transfer.

In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the Supreme Court of the United States invalidated the transfer of a juvenile because the transferring court failed to hold a due process hearing, failed to give defendant effective assistance of counsel, and failed to state the reasons for its decisions. But in the instant case the juvenile court followed the specific dictates of the Arizona statutes. It included a list of nine reasons for its finding that the juvenile should be transferred.

Among these reasons were such matters as the violent and antisocial nature of appellant's acts, the inability to rehabilitate him, and the insufficiency of time for reasonable prospects of rehabilitation between the date of the order, June 8, 1972, and appellant's eighteenth birthday on August 25, 1972. All of these supported the juvenile court's finding that appellant was not amenable to treatment or rehabilitation as a delinquent child through available facilities, that he was not committable to an institution for the mentally ill and that the safety and interest of the public required that he be transferred to adult court.

The matters listed by the juvenile court judge in appellant's case are very similar to those given for transferring juveniles in the District of Columbia, cited with favor by the United States Supreme Court in the Appendix (Policy Memorandum No. 7 November 30, 1959) to Kent v. United States, *supra,* and approved by this Court in State v. Yard, 109 Ariz. 198, 507 P.2d 123 (1973). We do not believe appellant was denied the equal protection of the laws as guaranteed him by the Fourteenth Amendment to the United States Constitution.

Such portions of the record which have been presented to the Court have been examined for prejudicial error and we have found none.

For the foregoing reasons, the judgment of the superior court is affirmed.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.