Bruce Wayne EDWARDS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. PC–77–475.

Court of Criminal Appeals of Oklahoma.

Feb. 14, 1979.

Fred P. Gilbert, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Kay Karen Kennedy, Asst. Atty. Gen., for appellee.

## OPINION

CORNISH, Presiding Judge:

The appellant, Bruce Wayne Edwards, was convicted on pleas of guilty in the District Court, Oklahoma County, in Case No. CRF–71–2890 and in Case No. CRF–72–500, for the offenses of Grand Larceny and Larceny From a Person. He was subsequently convicted in the District Court, Oklahoma County, in Case No. CRF–74–1220, for the offense of Attempted Robbery With Firearms, After Former Conviction of a Felony. Although he was sixteen and seventeen years of age, respectively, at the time the larcenies were committed, he was not given certification hearings. He now

contends in his post-conviction proceeding that his prior convictions should be vacated because he was denied equal protection of the law, and that the judgment and sentence rendered in Case No. CRF–74–1220 should be reversed or modified for the reason that the convictions in Case No. CRF–71–2890 and Case No. CRF–72–500 were void. His applications for post-conviction relief in the District Court, Oklahoma County, premised on this challenge, have been denied by the judges of the District Court in reliance on *Dean v. Crisp,* 536 P.2d 961 (Okl.Cr.1975).

I

■ Title 10 O.S.1971, § 1101, which was in effect at the time of the contested convictions,[1] defined the term "delinquent child" as a male person under the age of sixteen years. Under this statute, it was proper for the appellant to have been tried as an adult. However, in *Lamb v. Brown,* 456 F.2d 18 (10th Cir. 1972), the Tenth Circuit Court of Appeals held that statute was unconstitutional because it violated equal protection, and subsequently in *Radcliff v. Anderson,* 509 F.2d 1093 (10th Cir. 1974), *cert. denied* 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95 (1975), it determined that the ruling of *Lamb* should be applied retroactively.

In *Dean v. Crisp,* 536 P.2d 961 (Okl.Cr. 1975), this Court held that the ruling of the Tenth Circuit in *Radcliff* was not binding on the courts of the State of Oklahoma. We also held in *Dean* that the applicable law was that which was in effect prior to the passage of the unconstitutional law: Comp.Stat.1931, Ch. 14, art. 4, § 1729, which provided that a delinquent child was any person under the age of sixteen and that the treatment accorded males under the unconstitutional statute was in fact the same as that to which they were entitled

under the last valid statute. Relief was denied to all males between the ages of sixteen and eighteen years of age who had been treated as adults.

When the Tenth Circuit Court of Appeals declared 10 O.S.1971, § 1101, to be unconstitutional, the Oklahoma Legislature immediately in Laws 1972, Ch. 122, § 1, raised the determinative age for boys to eighteen years, rather than lowering the age for girls to sixteen years. We interpret this to be an expression of public policy that had the discriminatory aspect of the statute been realized before it was passed, the resolution of the discrepancy would have been uniformity at age eighteen rather than at age sixteen. Additional considerations which lead us to this conclusion were the undesirability and practical impossibility of achieving parity by initiating adult prosecutions against all women who were treated as juveniles during the period controlled by the unconstitutional statute and the inevitable violation against the prohibition against double jeopardy[2] such procedure would entail.

In *Garner v. State,* 430 F.Supp. 692, 694 (W.D.Okl.1975), the federal district court acknowledged that at the time of petitioner's conviction it was undeniable that females were accorded preferential treatment, and that he was discriminated against by a gender-based differential statute. Although the conviction was affirmed after an evidentiary hearing, because the Court had no difficulty in finding with a moral and legal certainty petitioner would have been certified in the case, the Court in its initial opinion said:

"... The fallacy of such view [i. e., that the petitioner received all the protection to which he was entitled] lies in its disregard of the federal constitutional reality. He was entitled to equal protec-

---

1. This statute has been amended. Title 10 O.S. Supp.1977, § 1101, ¶ (a) and ¶ (b), provide:

 "The term 'child' means any person under the age of eighteen (18) years.

 "The term 'delinquent child' means:

 "(1) a child who has violated any federal or state law or municipal ordinance, excepting a

 traffic statute or traffic ordinance; or any lawful order of the court made under this act; or

 "(2) a child who has habitually violated traffic laws or traffic ordinances."

2. *Garrison v. Jennings,* 529 P.2d 536 (Okl.Cr. 1974).

tion. He was entitled to the same treatment as the favored class. In short, it was the treatment that he received which flaws the proceedings. . . ."

The inherent weakness in the majority approach in *Dean* is that it ignores the fact that during the period in question boys between the ages of sixteen and eighteen years did receive different treatment from that given to girls of the same age. Even if the position of *Dean* is adopted that boys received only the treatment to which they were entitled, then one must also accept the necessary corollary that the girls were given better treatment than that to which they were entitled. It is unavoidably true that there was unconstitutional discrimination and denial of equal protection.

Insofar as *Dean v. Crisp,* 536 P.2d 961 (Okl.Cr.1975), is inconsistent with the views expressed in this opinion, it is hereby overruled.

## II

However, if *Dean v. Crisp* is to be overruled in part, the question of whether to give retroactive relief to all the boys between ages sixteen years and eighteen years who were prosecuted as adults without benefit of a certification hearing is presented.

In *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, 608 (1965), the United States Supreme Court determined there is no absolute rule concerning retroactivity. The Court said:

". . . [W]e believe that the Constitution neither prohibits nor requires retrospective effect. . . . Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits

in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. . . ."

Subsequently, the Court promulgated three criteria to be used in determining the question of retroactivity: the purpose to be served by the new rule; the extent to which law enforcement officers have relied on the old rule; and the effect which a retrospective application of the new rule will have upon the administration of justice.[3]

Then, in *Robinson v. Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), the United States Supreme Court stated that the *Linkletter* approach was not applicable to all retroactivity cases.[4] The issue in *Robinson* was the retrospective application of the prohibition against double jeopardy, the Court said:

"The guarantee against double jeopardy is significantly different from procedural guarantees held in the Linkletter line of cases to have prospective effect only. While this guarantee, like the others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial. . . ."

In *United States v. United States Coin & Currency,* 401 U.S. 715, 723, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the Supreme Court determined that privilege against self-incrimination could be properly invoked in forfeiture proceedings. The Court held that in the absence of a waiver of the privilege, such persons could not be properly prosecuted at all.

 Certification of a juvenile is not a constitutional right,[5] but equal protection of the law is; and because girls between the

---

3. *Johnson v. State of New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

4. This decision was bottomed on *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d

906 (1968), which held that the Fifth Amendment privilege against self-incrimination was a valid defense to a prosecution for failure to comply with federal gambling registration and tax statutes.

5. *Smith v. Yeager,* 459 F.2d 124 (3rd Cir. 1972).

ages of sixteen and eighteen years of age were treated as children, it can be said that the boys of the same age had a constitutional right to also be treated as children. Gender-based differential statutes infringe upon the fundamental right to liberty because they involve not only the possibility of incarceration but concern the severity and length of commitment as well.[6] Statutory classifications which distinguish between males and females are subject to scrutiny under the equal protection clause.[7] Juvenile statutes which are sexually discriminatory are violative of the equal protection clause of the Fourteenth Amendment because they are unreasonable, arbitrary and provide no rational basis for effecting the statutory legislative purpose.[8]

The State argues that the instant case should be controlled by *Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), which concerned the retroactivity of *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). In *O'Callahan,* the Supreme Court had ruled that when a person in military service is charged with a crime which is not "service connected," then the person is entitled to the constitutional guarantees of indictment by the grand jury and trial by jury in a civilian court. In *Gosa* the Court declined to hold that ruling to be retroactive. In the plurality opinion, Mr. Justice Blackmun used the approach of *Linkletter* and *Stovall.* He distinguished *United States Coin & Currency* and *Robinson* by saying that the question in *Gosa* was "the appropriateness of the exercise of jurisdiction by a military forum," as opposed to a civilian forum, rather than the question of whether a trial should have been held at all. We do not find *Gosa* applicable to the instant case. In *Gosa* the Supreme Court appeared to determine the only issue which matters is the truth-finding process. It

found a civilian criminal trial and a military court-martial to be relatively equally reliable processes for arriving at the truth, and therefore retroactivity was not necessary.

In this case, the truth-finding function is not the only issue. There are differences between the adult and juvenile processes which make the question more than one of appropriateness. A juvenile convicted in an adult court may suffer loss of civil rights, disqualification from public employment, and the conviction may be utilized against him in later court actions. A juvenile who is proceeded against as an adult and is convicted will have a criminal record for the rest of his life, while a person who is proceeded against as a juvenile and is adjudicated delinquent will not. In addition, there are great differences in treatment after conviction and adjudication. The analogy to be drawn from *United States v. United States Coin & Currency,* and *Robinson v. Neal* is, that absent a waiver of the Juvenile Division of the District Court, appellant could not properly be prosecuted as an adult, and had a certification hearing been held and the court had refused to certify the juvenile to stand trial as an adult, the result would have been to prevent a trial from taking place at all. We, therefore, find that retrospective relief must be granted to those male persons who were prosecuted as adults without benefit of a certification hearing when they were between sixteen and eighteen years of age.

### III

The final issue to be determined is the nature of the relief to be granted. The Attorney General contends that the cause should be remanded to district court for a determination of whether the error in failing to secure certification was harmless.

---

6. See *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), for the premise that juvenile practices must conform to the essentials of due process.

7. *Craig v. Boren,* 429 U.S. 190, 197, 97 S.Ct. 451, 50 L.Ed.2d 397, 407 (1976); and *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

8. S. Davis, "Equal Protection for Juveniles: The Present Status of Sex-Based Discrimination in Juvenile Court Laws", 7 Ga.L.Rev. 494, 532 (1973); Annot., "What Constitutes Reverse or Majority Discrimination on Basis of Sex or Race Violative of Federal Constitution or Statutes," 26 A.L.R.Fed. 13 (1976).

He argues that if the State can show that certification would certainly have been granted had a hearing been held, then the appellant suffered no prejudice. This is the approach taken by the Tenth Circuit in *Radcliff,* supra, and *Bromley v. Crisp,* 561 F.2d 1351 (10th Cir. 1977), *cert. denied* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978).[9] However, appellant argues that because the Juvenile Division of the District Court had not waived its jurisdiction by certifying him to stand trial as an adult, the District Court did not have jurisdiction to try him as an adult. Consequently, he maintains, his conviction was void.

There are several cases pending before us challenging the convictions of males who were sixteen or seventeen years of age, and who were not certified to stand trial as adults as was required for females, from 1941 to April 4, 1972. Rather than address these issues separately in each of the cases where they arise, we choose to dispose of them in this opinion.

■ The applicable statute concerning certification, 10 O.S.1971, § 1112, provided that a child charged with violation of a state statute or municipal ordinance should not be tried in a criminal action until properly certified.[10] The statutory language is clear and unambiguous. The district court could not obtain jurisdiction to try a juvenile as an adult without a certification proceeding.

The basic theory of the Juvenile Court system is based on a social welfare philosophy and contemplates compassionate rehabilitation rather than criminal sanctions for certain youthful offenders. Its proceedings are designated as civil rather than criminal because the juvenile court is theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. The Juvenile Code is geared to the philosophy of protecting a child's right to full physical, mental, and moral development. The concept of the juvenile court system is that of *parens patriae,* the power of the State through the court to act in the behalf of the child as would a wise parent.[11] The concept must, however, be balanced with the court's responsibility to protect the public from delinquent acts of children.[12]

The transfer of a juvenile from the jurisdiction of the juvenile court to adult criminal court has been called the most severe sanction that can be imposed upon a juvenile. In *Kent v. United States,* 383 U.S. 541, 557, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the United States Supreme Court held that where a state creates a juvenile court system, a minor cannot be transferred out of the system without being afforded constitutional due process procedures including: a hearing; access by counsel to reports considered by the juvenile court in making the decision to transfer; and a statement of reasons for the juvenile court's decision to waive jurisdiction.

**9.** The United States Supreme Court has held that not every denial of a constitutional right necessitates reversal. See *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**10.** The statutory provision, 10 O.S.1971, § 1112, provided in pertinent part:
"(a) Except as hereinafter provided, a child who is charged with having violated any State statute or municipal ordinance *shall not be tried in a criminal action,* but in a juvenile proceeding in accordance with this act. . .
"(b) If a child is charged with delinquency as a result of an offense which would be a crime if committed by an adult, the court, after full investigation and a preliminary hearing, may in its discretion continue the juvenile proceeding, or it may certify such child capable of knowing right from wrong, and to be held

accountable for his acts, for proper criminal proceedings to any other division of the court which would have trial jurisdiction of such offense if committed by an adult." (Emphasis added)

**11.** It is provided by 10 O.S.1971, § 1129:
"This Act shall be liberally construed, to the end that its purpose may be carried out, to wit: That the care and custody and discipline of the child shall approximate, as nearly as may be, that which should be given by its parents, and that, as far as practicable, any delinquent child shall not be treated as a criminal."

**12.** Reed *Treating the Juvenile and Youthful Offender, Law Enforcement and the Juvenile Offender,* pp. 57–60 (Charles C. Thamer 1963).

■ The requirement that the juvenile court state its reasons for waiver of jurisdiction implies that while a juvenile remains amenable to treatment the juvenile court cannot waive jurisdiction. Unfortunately, the United States Supreme Court did not delineate substantive criteria of amenability to treatment applicable to all jurisdictions. Instead, it held that a state must apply its statutory substantive criteria in determining whether to waive juvenile jurisdiction.[13] The Court required an accompanying statement of reasons as an integral part of the waiver procedure and by including this requirement, indicated concern that the juvenile court's decision be subject to a meaningful appellate review. The Court cited as the basis for the trial court's statement of reason substantive elements of amenability to treatment.[14]

These standards have been adopted in subsequent judicial decisions[15] including *Sherfield v. State,* 511 P.2d 598 (Okl.Cr. 1973). The applicable statute has been amended to conform with these guidelines in which the eight criteria have been condensed to five.[16]

**13.** Peuler, "Juveniles Tried as Adults: Waiver of Juvenile Court Jurisdiction." 3 J. Contemp.Law 349 (1977). Vitiello, "Constitutional Safeguards for Juvenile Transfer Procedure: The Ten Years Since *Kent v. United States.*" 23 DePaul L.Rev. 23 (1976).

**14.** The reasons included:
1. The seriousness of the alleged offense to the community.
2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.
3. Whether the offense was against persons or against property.
4. The merit of the complaint.
5. Where the codefendants are adults, the desirability of trying the entire action at one trial.
6. The sophistication and maturity of the juvenile.
7. Previous contact with the juvenile court.
8. The likelihood of reasonable rehabilitation of the juvenile.

**15.** See *State v. Lemon,* 110 Ariz. 568, 521 P.2d 1000 (1974); *Mikulovsky v. State,* 54 Wis.2d 699, 196 N.W.2d 748 (1972).

**16.** It is provided by 10 O.S.Supp.1977, § 1112(a) and (b):
"(a) Except as hereinafter provided, a child who is charged with having violated any state statute or municipal ordinance shall not be tried in a criminal action, but in a juvenile proceeding in accordance with this act. If, during the pendency of a criminal or quasi-criminal charge against any person, it shall be ascertained that the person was a child at the time of committing the alleged offense, the district court or municipal court shall transfer the case, together with all the papers, documents and testimony connected therewith, to the juvenile division of the district court. The division making such transfer shall order the child to be taken forthwith to the place of detention designated by the juvenile division, to that division itself, or release such child to the custody of some suitable person to be brought before the juvenile division. However, nothing in this act shall be construed to prevent the exercise of concurrent jurisdiction by another division of the district court or by municipal courts in cases involving children wherein the child is charged with the violation of a state or municipal traffic law or ordinance.

"(b) If a child is charged with delinquency as a result of an offense which would be a felony if committed by an adult, the court on its own motion, or at the request of the district attorney, shall conduct a preliminary hearing to determine whether or not there is prosecutive merit to the complaint. If the court finds that prosecutive merit exists, it shall continue the hearing for a sufficient period of time to conduct an investigation and further hearing to determine the prospects for reasonable rehabilitation of the child if he should be found to have committed the alleged act or omission. Consideration shall be given to:

"1. The seriousness of the alleged offense to the community, and whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

"2. Whether the offense was against persons or property, greater weight being given to offenses against persons especially if personal injury resulted;

"3. The sophistication and maturity of the juvenile and his capability of distinguishing right from wrong as determined by consideration of his psychological evaluation, home, environmental situation, emotional attitude and pattern of living;

"4. The record and previous history of the juvenile, including previous contacts with community agencies, law enforcement agencies, schools, juvenile courts and other jurisdictions, prior periods of probation or prior commitments to juvenile institutions; and

"5. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile if he is found to have committed the alleged offense, by the

Although the situation in this case is somewhat different, we find the rationale of *Kent v. United States,* 383 U.S. 541, 564, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), to be highly persuasive. In *Kent* the Court said:

"Ordinarily we would reverse the Court of Appeals and direct the District Court to remand the case to the Juvenile Court for a new determination of waiver. If on remand the decision were against waiver, the indictment in the District Court would be dismissed. See *Black v. United States,* 122 U.S.App.D.C. 393, 355 F.2d 104 (1965). However, petitioner has now passed the age of 21 and the Juvenile Court can no longer exercise jurisdiction over him. In view of the unavailability of a redetermination of the waiver question by the Juvenile Court, it is urged by petitioner that the conviction should be vacated and the indictment dismissed. In the circumstances of this case, and in light of the remedy which the Court of Appeals fashioned in Black, supra, we do not consider it appropriate to grant this drastic relief. Accordingly, we vacate the order of the Court of Appeals and the judgment of the District Court and remand the case to the District Court for a hearing de novo on waiver, consistent with this opinion. If that court finds that waiver was inappropriate, petitioner's conviction must be vacated. If, however, it finds that the waiver order was proper when originally made, the District Court may proceed, after consideration of such motions as counsel may . . . enter an appropriate judgment. . ."

As in *Kent,* the appellant in the instant case is now beyond the jurisdiction of the Juvenile Division of the District Court, and for that reason we cannot merely remand for a new certification hearing. On the other hand, we do not believe that the nature of the error involved merits the "drastic relief" of vacation of the convictions.

■ The District Court, however, may find that it is not necessary to conduct a hearing on the question of certification. The appellant alleges that he was sixteen years of age at the time of his conviction, but this alone does not entitle him to relief. He could have been sixteen and been certified and his conviction in a criminal proceeding would have been entirely proper. Only if the Juvenile Division would have denied certification would the appellant's criminal conviction be totally improper.

■ For this reason, we hold that the appellant must be able to state to the District Court some valid reason to believe that certification would have been denied. If he can do this then he will be entitled to an evidentiary hearing on the question. The State has the burden to prove by a preponderance of the evidence that waiver of jur-

use of procedures and facilities currently available to the juvenile court.

"After such investigation and hearing, the court may in its discretion proceed with the juvenile proceeding, or it shall state its reasons in writing and shall certify that such child shall be held accountable for his acts as if he were an adult and shall be held for proper criminal proceedings for the specific offense charged, by any other division of the court which would have trial jurisdiction of such offense if committed by an adult. The juvenile proceeding shall not be dismissed until the criminal proceeding has commenced and if no criminal proceeding commences within thirty (30) days of the date of such certification, unless stayed pending appeal, the court shall proceed with the juvenile proceeding and the certification shall lapse.

"If not included in the original summons, notice of a hearing to consider whether a child should be certified for trial as an adult shall be given to all persons who are required to be served with a summons at the commencement of a juvenile proceeding, but publication in a newspaper when the address of a person is unknown is not required. The purpose of the hearing shall be clearly stated in the notice.

"(c) Prior to the entry of any order of adjudication, any child in custody shall have the same right to be released upon bail as would an adult under the same circumstances.

"(d) Any child who has been certified to stand trial as an adult and is subsequently convicted of the alleged offense shall be tried as an adult in all subsequent criminal prosecutions, and shall not be subject to the jurisdiction of the juvenile court in any further proceedings."

isdiction of the Juvenile Court would have occurred had a certification hearing been held.

■ Although the burden is upon the State to establish that certification would have occurred, all evidence bearing on that issue may be considered by the court concerning the nature of the offenses committed, and his subsequent criminal misconduct occurring in close proximity in time.[17]

■ If the State can establish that the appellant would have been certified had a certification hearing been held, then his application for post-conviction relief should be denied. If the State cannot carry its burden of proof, then post-conviction relief should be granted and the appellant's convictions should be vacated.[18]

■ A sufficient record should be made to support the findings of fact and conclusions of law made by the District Court, in order to avoid the necessity of further evidentiary hearings, should the issue be again raised in a subsequent habeas corpus proceeding in federal court. In all cases where convictions are challenged on these grounds, they must be instituted by the petitioners in the counties where the convictions occurred, in proper post-conviction proceedings, and cannot be joined in a class action. Because of the extreme nature of the relief which may result in cases involving age discrimination in certifications, we do not believe it is appropriate to grant any sort of blanket relief to all the persons affected. The only proper way to determine whether or not vacation is necessary is on a case-by-case approach, when the issue is raised by someone who claims to have been the victim of an unconstitutional conviction.[19] An individual's conviction will be overturned only if there is a finding made that the individual would not have been certified if a certification hearing had been held.

■ The fundamental right to due process and the concepts of substantial justice and fair play upon which our legal system is grounded, will not tolerate a result whereby one who was a juvenile when the alleged procedural defects occurred has been penalized without opportunity to have determined under appropriate procedures and by an application of approved criteria whether the Juvenile Court would have relinquished its jurisdiction.[20]

## IV

The appellant in the instant case is attempting to overturn convictions which he claims were unconstitutionally imposed; and if his claims are correct then he is entitled to have those convictions immediately vacated.

If in the hearing it is determined that the appellant would not have been certified under these standards, then the convictions in Case No. CRF–71–2890 and in Case No. CRF–72–500 must be vacated; and the court should then consider whether the judgment and sentence imposed in Case No. CRF–74–1220 should be modified. If, on the other hand, the court concludes that appellant would have been certified, the convictions in Case No. CRF–71–2890 and Case No. CRF–72–500 and in Case No. CRF–74–1220 should not be disturbed.

■ A different situation will exist, however, for those persons who are challenging not invalid convictions, but those in which the punishment was enhanced as a result of prior invalid convictions. Such a person is not entitled to an immediate vacation of the conviction. Nevertheless, he might be entitled to relief in the form of modification of the sentence.

A person in such a situation must be able to state to the District Court some reason to

---

**17.** See *Garner v. Oklahoma*, 430 F.Supp. 692 (W.D.Okl.1975), affirmed sub nom. *Bromley v. Crisp*, supra.

**18.** *In Re Miles*, 269 Md. 649, 309 A.2d 289 (1973); *Imel v. State*, 342 N.E.2d 897 (Ind.App. 1976).

**19.** *Woodall v. Pettibone*, 465 F.2d 49, 50 (4th Cir. 1972).

**20.** See *Knott v. Langlois*, 102 R.I. 517, 231 A.2d 767, 771 (1967).

believe that certification would have been denied if a certification hearing had been held. If he can do this, and if the State cannot establish that the person *would* have been certified, then the District Court should grant the appropriate relief.[21] In most cases it should be possible to make a determination on the pleadings, but if it is not then a hearing must be held, in accordance with 22 O.S.1971, § 1084.[22]

For the above and foregoing reasons, this post-conviction proceeding is hereby *RE-MANDED* to the District Court for further proceedings consistent with this opinion.

BUSSEY, J., specially concurs.

BRETT, J., concurs.

BUSSEY, Judge, specially concurring:

There several cases pending before us challenging the convictions of males who were sixteen or seventeen years of age, and who were not certified to stand trial as adults—as was required for females—from 1941 to April 4, 1972. Rather than addressing these issues separately in each of the cases where they arise, I wish to express my views in this opinion.

It is argued that absent certification of a sixteen or seventeen year old male, the trial courts of this State were without jurisdiction to try said males; and reference has been made to the early case of *Wilson v. State*, 65 Okl.Cr. 10, 82 P.2d 308 (1938). The holding in *Wilson* was overruled in *Ex parte Lewis*, 85 Okl.Cr. 322, 188 P.2d 367 (1947), which was cited with approval in *Johnson v. State*, Okl.Cr., 321 P.2d 976 (1958). The Juvenile Courts did not have jurisdiction over males sixteen years of age and older between 1941 and April 4, 1972; however, the trial courts of the State of Oklahoma did have jurisdiction over them

in criminal cases. This being true, certification to stand trial as an adult was neither authorized by statute nor required at the time of their convictions. See *Schaffer v. Green*, Okl.Cr., 496 P.2d 375 (1972), *Freshour v. Turner*, Okl.Cr., 496 P.2d 389 (1972), and *Dean v. Crisp*, Okl.Cr., 536 P.2d 961 (1975).

The retroactive application of *Lamb v. Brown*, 456 F.2d 18 (10th Cir. 1972), in *Radcliff v. Anderson*, 509 F.2d 1093 (10th Cir. 1975), cert. den. 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95 (1975), and in the more recent decision of *Bromley v. Crisp*, 561 F.2d 1351 (10th Cir. 1977), cert. den., 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978), has created confusion in the trial courts of this jurisdiction. And while I am personally convinced of the correctness of the dissenting opinions of Judges Seth and Barrett (concurred in by Judge Hill) in *Bromley*, supra, and of the wisdom of the 7th Circuit decision of *United States ex rel. Watson v. Housewright*, 528 F.2d 259 (7th Cir. 1975) (participated in by the late Tom Clark, former Associate Justice of the United States Supreme Court), which reached a different conclusion on retroactivity involving an identical question, the necessity of protecting our citizens from the wholesale release of guilty and dangerous criminals compels me to conclude that evidentiary hearings on the issue of whether these convicted males would have been certified had certification hearings been held prior to their convictions must be held in the trial court wherein the conviction was sustained. In the instant case, although the trial court properly denied relief under *Dean v. Crisp*, supra, I reluctantly would remand this case for an evidentiary hearing to determine whether the appellant was of the age alleged at the time of the trial, and whether

---

**21.** If the challenged conviction is not the only prior felony conviction the person has, it may be that no modification is appropriate, depending upon the nature of the prior felonies and the length of sentences imposed.

**22.** It is provided by 22 O.S.1971, § 1084:
"If the application cannot be disposed of on the pleadings and record, or there exists a material issue of fact, the court shall conduct an evidentiary hearing at which time a record

shall be made and preserved. The court may receive proof by affidavits, depositions, oral testimony, or other evidence and may order the applicant brought before it for the hearing. A judge should not preside at such a hearing if his testimony is material. The court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented. This order is a final judgment."

or not he would have been certified to stand trial as an adult under the appropriate certification standards in force in Oklahoma at the time the trial occurred. See *Freshour v. Turner,* supra, and 10 O.S.1971, § 1112(b).[1]

If in said hearing it be determined that the appellant would not have been certified under these standards, then the convictions in Case No. CRF–71–2890 and in Case No. CRF–72–500 must be vacated; and the court should then consider whether the judgment and sentence imposed in Case No. CRF–74–1220 should be modified. If, on the other hand, the court concludes that Edwards would have been certified, the convictions in Case No. CRF–71–2890 and Case No. CRF-72–500, and in Case No. CRF–74–1220 should not be disturbed. Although the burden is upon the State to establish that certification would have occurred, all evidence bearing on that issue may be considered—including the prior juvenile record of the defendant, the nature of the offenses committed, and his subsequent criminal misconduct occurring in close proximity in time. (See *Garner v. Oklahoma,* 430 F.Supp. 692 (W.D.Okl.1975), affirmed sub nom. *Bromley v. Crisp,* supra). Sufficient findings of fact and conclusions of law should be made by the District Court, in order to avoid the necessity of further evidentiary hearings should the issue be again raised in a subsequent habeas corpus proceeding in federal court. In all cases where convictions are challenged on these grounds, they must be instituted by the petitioners in the counties where the convictions occurred, in proper post-conviction proceedings, and cannot be joined in a class action.

---

1. Title 10 O.S.1971, § 1112(b) provides as follows:

"(b) If a child is charged with delinquency as a result of an offense which would be a crime if committed by an adult, the court, after full investigation and a preliminary hearing, may in its discretion continue the juvenile proceeding, or *it may certify such child capable of knowing right from wrong, and to be held accountable for his acts,* for proper criminal proceedings to any other division of the court which would have trial jurisdiction of such offense if committed by an adult."