Earl Anderson FRANKLIN, Appellant,

v.

French CONWAY et al., Appellees.

No. 76–1675.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 8, 1976.

Decided Dec. 30, 1976.

Marvin Schiller, Raleigh, N. C., for appellant.

Linwood T. Wells, Jr., Asst. Atty. Gen. of Virginia, Richmond, Va. (Andrew P. Miller,

Atty. Gen. of Virginia, Richmond, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

Incarcerated in North Carolina for a conviction under North Carolina law, Earl A. Franklin unsuccessfully sought a writ of habeas corpus to set aside a Virginia conviction of possession of burglary tools with intent to commit larceny. The Virginia conviction resulted in a five-year sentence to be served after expiration of the North Carolina sentence. In the district court, Franklin contended that in the Virginia proceedings (1) he had been denied effective assistance of counsel, (2) he had been denied his right to a jury trial, (3) his right to counsel at a lineup, the results of which were used against him, was violated, and (4) his right not to incriminate himself was denied when he concluded to testify in his own defense. We think that the district court properly denied relief on these grounds for the reasons sufficiently stated in the opinion and judgment of the district court.

Before us, Franklin asserts the invalidity of Va.Code § 18.1–87 (1960) (now Va.Code § 18.2–94 (1975)) as an additional ground for relief. That statute proscribes the possession of any tools, implements or outfit, with intent to commit burglary, robbery or larceny, and makes possession of the same *prima facie* evidence of an intent to commit burglary, larceny or robbery.[1] Franklin contends that in creating a presumption of intent to commit larceny, the statute denies due process of law. However, Franklin did not raise this question in his state post-conviction attacks on his Virginia conviction, and we think that he must be required to

exhaust available state remedies before the issue is considered by a federal court. We therefore affirm.

I.

At about 7:30 p. m. on July 15, 1971, Franklin was seen standing near the door of the Aaron Building in Danville, Virginia. An object, later identified as a crowbar, was seen protruding from under his coat. He was seen leaving the building entrance, with the crowbar still partially concealed, walking toward some railroad tracks.

When these observations were reported to the police, they arrived to investigate. Franklin was found sitting in the grass near some railroad tracks about two blocks from the building. Within two to four feet from where Franklin was sitting the police found a crowbar, a properly loaded thirty-two caliber pistol and a leather glove. Another glove was found in Franklin's back pocket and he had twenty-two caliber shells on his person. The police inspected the Aaron Building and found no evidence of forced entry. Franklin was arrested and charged with possession of tools with intent to commit larceny.

At trial, Franklin testified that while returning from the house of a friend, he noticed that he had a flat tire. In order to change the tire he drove his car into the parking lot behind the Aaron Building, but in so doing he damaged the rim of the wheel. He claimed that he was going to a junkyard to get a new wheel when, feeling some indisposition, he sat down near the tracks where the police found him. He said that the thirty-two caliber pistol did not belong to him and the twenty-two caliber cartridges were for a rifle he had at home. The glove, he said, was used in roofing work that he had done earlier in the day, and that he had used the crowbar to change the tire. He claimed that he was carrying

---

1. The full text of the statute, as it presently exists, follows:

    § 18.2–94. Possession of burglarious tools, etc.—If any person have in his possession any tools, implements or outfit, with intent to commit burglary, robbery or larceny, upon conviction thereof he shall be guilty of a

    Class 5 felony. The possession of such burglarious tools, implements or outfit by any person other than a licensed dealer, shall be prima facie evidence of an intent to commit burglary, robbery or larceny.

    The present text differs from its predecessors only in minor respects not relevant to this case.

the crowbar in case it was necessary to remove a tire from the wheel he expected to purchase at the junkyard. He denied any intent to commit larceny.

The police testified that a '55–'56 Ford registered to Franklin was found in the parking lot behind the Aaron Building, but they were not interrogated about the condition of its wheels.

## II.

■ The validity the statute under which Franklin was convicted was considered and sustained in *Burnette v. Commonwealth,* 194 Va. 785, 75 S.E.2d 482 (1953). *See also Nance v. Commonwealth,* 203 Va. 428, 124 S.E.2d 900 (1962). Ordinarily these decisions would relieve Franklin of any necessity of exhaustion of available state remedies before attacking the validity of the statute in the federal courts under the well-established principle that exhaustion is not required where exhaustion would be futile. Stated otherwise, exhaustion of available state remedies is not required when a state has made a final and authoritative disposition of a constitutional claim in other proceedings because there is then either no "available" state remedy, or the state remedy is "ineffective" to redress the claimed constitutional deprivation within the meaning of 28 U.S.C. § 2254(b). *See Ham v. North Carolina,* 471 F.2d 406 (4 Cir. 1973); *Perry v. Blackledge,* 453 F.2d 856 (4 Cir. 1971). But *Burnette,* and therefore *Nance,* rest upon a decision of the Supreme Court of the United States which has been altered by later Supreme Court decisions which the state court has not had the opportunity to consider. We therefore conclude that the instant case is an appropriate one to require further exhaustion of state remedies. *See Wright v. Maryland Penitentiary, State of Maryland,* 429 F.2d 1101 (4 Cir. 1970); *James v. Copinger,* 428 F.2d 235 (4 Cir. 1970).

In *Burnette,* the Supreme Court of Appeals of Virginia held that, upon proof of the possession of burglarious tools, the statute created a presumption or *prima facie* evidence of intent to commit burglary; that

this presumption did not deny due process, equal protection, an accused's right to trial by jury, or any other constitutional guarantee; and that the presumption cut off no defense and constituted no obstacle to a contest of all issues of fact. The Virginia court said that the presumption did no more than create a rule of evidence that shifted the burden of going forward to the defendant, but did not shift the burden of ultimate proof or deprive a defendant of his right to have the jury instructed on the presumption of evidence. Recognizing *Yee Hem v. United States,* 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925), as the definitive Supreme Court authority, the Virginia court placed its rejection of the constitutional claims upon its conclusion that a statute may constitutionally create such a presumption where "there [is] some rational connection between the fact proved and the ultimate fact to be established." 75 S.E.2d at 485. *Nance* made no further analysis of the constitutionality of the presumption. It merely adopted the construction of the statute placed on it in *Burnette.*

We have no occasion to consider whether the Virginia court correctly applied *Yee Hem,* because the Supreme Court of the United States decided *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), and *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), as well as other pertinent cases after the decision in *Burnette. Leary* and *Barnes* refine and, at least arguably, alter the test of validity set forth in *Yee Hem.* In *Leary,* the basic test of invalidity was stated to be whether "it can . . . be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." 395 U.S. at 36, 89 S.Ct. at 1548. *Barnes,* in an attempt to harmonize *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965)—all of which are pertinent—and *Leary* stated:

What has been established by the cases . . . is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process. 412 U.S. at 843, 93 S.Ct. at 2361.

■ Thus, *Barnes* may be read to suggest that the Virginia statute would meet the requirements of due process only if it can be said with substantial assurance that the inference of intent to commit burglary may, beyond a reasonable doubt, be inferred from the fact of possession of "burglarious" tools, implements or outfit. Although we stress that we express no opinion on the merits, we readily perceive that the facial validity of the Virginia statute under *Barnes* and *Leary* presents a substantial question not considered by the *Burnette* court in its analysis of *Yee Hem.*[2]

■ There is an additional reason for requiring exhaustion. A judicial determination of the appropriate scope of a state statute is primarily a question for the state courts. Neither the statute nor *Burnette* and *Nance* define what is a "burglarious" tool, etc. If the meaning is that a tool is capable of being used to force illegal entry, a nail file in a woman's purse or a tire iron in the truck of an automobile owned and possessed by a thoroughly law-abiding citizen falls within the definition because it may be used to pick a lock or pry open a latched window or door, respectively. If such innocent objects acquire the quality of being "burglarious" only by reason of proof of possession under other suspicious circumstances, the Virginia courts have not yet so expressly limited the presumption. But any determination of the constitutionality of the statute must begin with the scope of the statute, and it is appropriate that the state court have an opportunity to define the scope of the statute prior to federal intervention, both for reasons of comity and to give it the opportunity to define the statute in a manner consistent with the state policy. Thus, even aside from consideration of what changes have been wrought by *Leary* and *Barnes* and how they may have affected the validity of the statute, judicial interpretation of the scope of the statute is more appropriately a question for the Virginia courts than for us.

Essentially, however, we rely on what we said in *Wright:*

As a general rule, state courts should have an opportunity to apply a recent change in constitutional law to a prisoner's case, when the change was effectuated by a Supreme Court decision rendered after the state courts have last considered the case. 429 F.2d at 1104–1105.

In the instant case, the Virginia courts have never considered the validity of the statute, so far as we are advised, in any case since the decisions in *Leary* and *Barnes.* It is appropriate that they do so before we consider the issue.

*AFFIRMED.*

**2.** Without expressing, but not foreclosing, approval of *Benton v. United States,* 98 U.S.App. D.C. 84, 232 F.2d 341 (1956), we note that a majority of that court held invalid the portion of the District of Columbia statute rendering as a basis for criminal sanctions the possession of instruments, tools or implements which "reasonably may be employed in the commission of any crime" unless the possessor can satisfactorily explain his possession. The court treated the statute as one creating a presumption that possession of an instrument that *may* be used for criminal purposes was in possession of an instrument that *was* used for criminal purposes. The court said that validity did not depend on whether the statute was considered as one shifting the burden of proof or merely the burden of going forward with the evidence.