v.

The STATE of Oklahoma, Appellee.

No. J-77-746.

Court of Criminal Appeals of Oklahoma.

June 5, 1978.

John T. Elliott, Public Defender, Oklahoma County, Richard L. Weldon, Asst. Public Defender, Theresa L. Bowman, Legal Intern, for appellant.

Andrew M. Coats, Dist. Atty., Oklahoma County, Myrna Sisson, Asst. Dist. Atty., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant, C. G. H., hereinafter referred to as defendant, was certified to stand trial as an adult for the offense of Murder in the First Degree, in violation of 21 O.S.Supp.1977, § 701.7, in the Juvenile Division of the Oklahoma County District Court, Case No. JF–77–1441, the Honorable Charles Halley presiding.

At the hearing to determine prosecutive merit held on August 30, 1977, the following evidence was adduced. Floyd Wayne Rice and Mary Sue Ray testified that on the evening of July 26, 1977, they, the defendant, and Robert William Smith were drinking together in the Spark Plug Lounge in Oklahoma City. At closing time, they left and went to Mary Ray's home. Ms. Ray went to bed while the three men continued drinking. Subsequently, at about 2:00 a. m., the defendant and Robert Smith left in Smith's car, ostensibly to get more beer. However, according to Rice, they never returned. Both Rice and Ray testified that on that evening the defendant displayed to them a .22 caliber derringer which he carried. The following morning Robert

Smith was found dead in a bar ditch, the victim of a gunshot wound to the chest. His body contained no wallet or identification. However, police later made identification through fingerprints. After conducting their investigation, which included interviews with Ms. Ray, Rice and Billie Jean Hood, the defendant's sister, the defendant was located and arrested. In the home where the defendant was found was also found a .22 caliber derringer, which Ms. Ray and Rice testified resembled the one which the defendant had shown them.

While en route to the police station, the officers learned that the defendant was a minor. His mother, Mrs. Baysinger, was contacted. On the afternoon of the 28th after being read his *Miranda* rights, the defendant made statements indicating that he had shot Robert Smith in "self-defense," in order to repel sexual advances. The defendant stated that after shooting Smith he took the victim's car and burned it. In the statement, the defendant denied knowledge of the whereabouts of the victim's wallet. The following day, July 29, the defendant signed a transcription of his statement.

Additionally, the defendant's sister, Billie Jean Hood, testified that she spoke with the defendant early on the morning of July 28th, before his arrest, and that the defendant stated to her that he had shot and killed someone.

The defendant's first assignment of error is that the trial court erred in permitting the defendant's "confession" to be introduced into evidence over his objection. Two propositions are asserted. The first is that the State failed to demonstrate that the defendant made a knowing and intelligent waiver of his right to counsel and of his right to remain silent. Second, the defendant asserts that the terms of 10 O.S. 1971, § 1109, were not complied with. That section states in pertinent part:

"(a) No information gained by questioning a child shall be admissible into evidence against the child unless the questioning about any alleged offense by law enforcement officer or investigative agency, or employee of the court, or the Department is done in the presence of said child's parents, guardian, attorney, or the legal custodian of the child, and not until the child and his parents, or guardian, or other legal custodian shall be fully advised of their constitutional and legal rights, including the right to be represented by counsel at every stage of the proceedings, and the right to have counsel appointed by the court and paid out of the court fund if the parties are without sufficient financial means; . . . ."

It is apparent that the defendant's two propositions are intertwined. As we stated in *J. T. P. v. State*, 544 P.2d 1270 (1975), Section 1109 is an "automatic and mandatory" rule, which cannot be waived by the juvenile or anyone else. The statute states in no uncertain terms that unless the juvenile's attorney or guardian is present and unless both are advised of their rights the statements are inadmissible. On the other hand, while an adult criminal suspect has the constitutional right to remain silent and to have an attorney present during questioning, he may waive these rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The facts herein demonstrate that the literal terms of Section 1109 were complied with. Officer Cook stated that the defendant and his mother were advised of their rights and that the defendant thereafter gave a statement in the presence of his mother. This much is undisputed.

The question is two-fold. First, is mere literal compliance with Section 1109 enough? And second, if so, did the defendant knowingly and intelligently waive his right to counsel and his right to remain silent before giving his statement?

The defendant cites two cases from within this jurisdiction and two cases from without, which seemingly indicate that the mere presence of a parent or guardian does not by itself render the juvenile's statements admissible. In *Ezell v. State*, Okl.Cr., 489 P.2d 781 (1971), this Court, in reversing the conviction, placed emphasis on the fact

that, "There was no evidence as to the ability of the minor to comprehend the effect of his waiver. Nor, any evidence showing the ability of his mother or legal custodian to properly advise him." Similarly, in *Layton v. State*, Okl.Cr., 551 P.2d 270 (1976), this Court reversed a conviction because of an accumulation of errors, one of which was that, "The record does not reflect that defendant was given the opportunity for private discussion with her mother concerning the ramifications of executing the rights waiver." See also, *People in Interest of L. B.*, 33 Colo.App. 1, 513 P.2d 1069 (1973), quoted by this Court in *J. T. P. v. State*, supra. See also, *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977).

Herein, the record fails to reflect that the defendant had the ability to comprehend the nature of the rights waiver and, further, it fails to reflect whether the defendant was given an opportunity to confer privately with his mother, or that he had the ability to understand the consequences of a waiver. All that is shown by the State is that the rights were read to the defendant and his mother, and that the defendant and his mother were asked if they understood, to which they nodded their heads and Mrs. Baysinger said "yes." Thereafter, the questioning of the defendant began, and by a question and answer process the defendant's statement was obtained.

■ At the hearing on prosecutive merit, neither the defendant nor his mother testified. Further, nowhere in the record does it appear that Officer Cook, who conducted the interrogation, was even asked if the defendant and his mother privately conferred, or if they were given an opportunity to do so. Further, as we read the transcript, no emphasis was placed on whether or not the defendant and his mother had the ability to comprehend the meaning of a rights waiver. Because of this failure of proof at the hearing, we are of the opinion that the State's showing of literal compliance with Section 1109 justified the lower court's finding that both the letter and the spirit of that section had been satisfied.

■ What we have said in the foregoing does not dispose of all the defendant's contentions. The language of Section 1109 requires only that an attorney or guardian be present, and that the juvenile and his guardian be advised of their rights. No waiver of such rights is mandated by the statute before a statement may be admissible into evidence. The United States Constitution does, however, require such a waiver. *Miranda v. Arizona*, supra.

■ Before a defendant's statements to police officers may be admitted, the State must show that a criminal defendant knowingly and intelligently waived his right to counsel and his right to remain silent. *Davis v. State*, Okl.Cr., 524 P.2d 46 (1974). In *Miranda v. Arizona*, supra, it is stated:

"An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), is applicable here:

" 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence, which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' " 384 U.S. at 475, 86 S.Ct. at 1628.

But here the record is not silent. Detective Cook testified, without contradiction, that he advised the defendant of his rights and that the defendant nodded his head when asked if he understood. Standing alone, this perhaps would be insufficient proof of the "knowing and intelligent" waiver which the law demands. But there is more. Although Detective Cook stated that he did not present a written rights notification and waiver form to the defendant for signature, it appears that the written statement which the defendant signed

was on a form entitled "Voluntary Statement," which contained a rights notification. After the notification, two questions appear; "Do you understand your rights as listed above?" and, "Are you willing to waive these rights and give a statement?" Both questions are answered "Yes."

In *Williams v. State*, Okl.Cr., 542 P.2d 554 (1975), we stated in the Fifth paragraph of the Syllabus as follows:

"This Court will not disturb the trial court's ruling permitting the introduction of a confession if supported by sufficient evidence that the defendant knowingly and intelligently waived his rights and understood the consequence of said waiver."

■ We think this rule is eminently applicable to this case. Although the defendant's argument that there was no proper waiver is somewhat persuasive, we defer to the trial court's ruling which we find has support in the record. However, we further hold that our decision herein in no way limits the defendant from raising these same issues at the trial of this matter. Neither the defendant nor his mother testified concerning the giving of the statement, and what they say could very well persuade the trial court that the statement is inadmissible. For purposes of the hearing to determine prosecutive merit, however, we conclude that the defendant's statement was properly admitted. The defendant's first assignment of error is therefore without merit.

■ The defendant's second assignment of error is that the evidence is insufficient to justify the finding of prosecutive merit. Apparently, this contention is predicated upon the assumption that we would agree with the defendant that his confession was improperly received into evidence. Since we have heretofore held the confession admissible and since a review of the record reveals that the "corpus delicti" was sufficiently proved, we are of the opinion that the evidence did indeed justify the finding of prosecutive merit.

■ The defendant's third assignment of error is that the psychological evaluation of the defendant, prepared by psychologist Nelda Ferguson, and introduced into evidence was not what it purported to be. Rather, the defendant asserts, it was merely hearsay upon hearsay and it should not have been considered by the court in determining whether the defendant was amenable to rehabilitation within the juvenile system.

We note that the report, hearsay in itself, contained a statement by the examiner that she had learned from Oklahoma County jailers that the defendant had said he intended to "play crazy" in order to be sent to the State mental hospital in Norman.

■ Recently, we were faced with a similar issue. In *Bledsoe v. State*, Okl.Cr., 572 P.2d 235, 237 (1977), it is stated:

"[I]t is not necessary to lay a foundation for the admissibility of social reports in a certification hearing. Further, it is not necessary that the person preparing the social report have personal knowledge of the matters which he obtains from a juvenile's record in another county."

Thereafter, we stated, quoting *Matter of J. S.*, Okl.Cr., 556 P.2d 641 (1976), that although hearsay would thus be admissible the juvenile must be given an opportunity to "examine, criticize, and refute" the reports on matters contained therein. Herein, the defendant had such opportunity but failed to utilize it. In any case, the defendant's record amply justifies a finding that he is not amenable to rehabilitation within the juvenile system, even if some of the material contained within the psychological evaluation was technically hearsay. The defendant's third assignment of error is without merit.

■ The defendant's final contention is that the trial court did not find the necessary "mens rea" required by 21 O.S.Sup. 1977, § 701.7 A. That section states:

"A person commits murder in the first degree when he unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away

the life of a human being, which is manifested by external circumstances capable of proof."

Concerning the defendant's contention, the record reflects the following:

"[THE COURT]: 4. The Court finds that there is not prosecutive merit to the charge of Murder in the First Degree. That is to say, a homicide committed while engaged in committing or attempting to commit the crime of Robbery with a Dangerous Weapon; the Court finds however prosecutive merit to the charge of Murder in the First Degree in that said homicide was committed with malice aforethought with an offensive weapon; to-wit: a .22 caliber derringer, which the juvenile habitually carried on his person.

"MR. WELDON: Your Honor, I would object specifically to that, your interpretation of 701.7, sub-section A.

"THE COURT: Would you like to explain your objection?

"MR. WELDON: Your Honor, it goes to your interpretation of the sub-section.

"THE COURT: You mean to the words 'with malice aforethought'?

"MR. WELDON: Yes, sir, which goes on to say 'malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.'

"Your Honor heard the testimony and I feel that the finding was in error and would like to specifically object to that.

"THE COURT: Very well. I think the external circumstances of that finding are capable of proof.

"MR. WELDON: Then, your Honor, at this time—

"THE COURT: Exception allowed."

The defendant asserts that the court's remarks indicate that it felt the mens rea could be proven, but that it had not yet been accomplished.

We disagree with defense counsel's interpretation of the court's remarks. Clearly, the court was indicating that it believed that the State had introduced evidence sufficient to show that the defendant committed a homicide. The defendant's final assignment of error is without merit.

For the foregoing reasons, the order certifying the defendant to stand trial as an adult for the crime of Murder in the First Degree is *AFFIRMED*.

BUSSEY, P. J., and BRETT, J., concur.