Richard CRISP, Warden, et al., Appellants,

v.

Paul MAYABB, Appellee.

No. 81–1289.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 15, 1981.

Decided Sept. 29, 1981.

On Rehearing Feb. 16, 1982.

Larry Oakes, Asst. Atty. Gen., Oklahoma City, Okl. (Jan Eric Cartwright, Atty. Gen., and Michael Avant-Pybas, Asst. Atty. Gen., Oklahoma City, Okl., with him on the brief), for appellants.

Fred P. Gilbert, Tulsa, Okl., for appellee.

Before McWILLIAMS and DOYLE, Circuit Judges, and TEMPLAR,* District Judge.

WILLIAM E. DOYLE, Circuit Judge.

The cause before us is an appeal by the State of Oklahoma through the Attorney General of that State, seeking reversal of the judgment of the United States District Court which granted a writ of habeas corpus to the petitioner-appellee herein. The trial court issued the writ and directed the release from custody of the petitioner-appellee Paul Mayabb. The appeal is pursuant to 28 U.S.C. § 1291.

The petitioner-appellee was convicted following a plea of guilty to the crime of murder on April 13, 1971, and was sentenced to life in prison by the Seventh Judicial District Court of the State of Oklahoma. No appeal was taken from the conviction, but Mayabb did file a petition for a writ of habeas corpus in the District Court of Oklahoma County. This petition was denied June 3, 1975 and the judgment was affirmed on appeal by the Court of Criminal Appeals of the State of Oklahoma.[1]

Mayabb's next step was to file a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In that petition, it is alleged that Mayabb's constitutional rights were violated by reason of the fact that at the time of his conviction, males aged 16 to 18 who were charged with crimes in Oklahoma were tried as adults, while females in the same age group were treated as juveniles unless certified for trial as adults. At the

time of the alleged murder petitioner was 17 years of age but close to 18. In his petition he alleged that the discriminatory treatment of males was unconstitutional. The denial of Fourteenth Amendment equal protection of the law it is asserted, entitles him to have the conviction vacated and to be released from custody. Petitioner relied on this court's decisions in *Lamb v. Brown*, 456 F.2d 18 (10th Cir. 1972) and *Radcliff v. Anderson*, 509 F.2d 1093 (10th Cir. 1974), *cert. denied*, 421 U.S. 939, 95 S.Ct. 1667, 44 L.Ed.2d 95 (1975).

The following points are made by the State of Oklahoma:

1. The federal district court was obligated to require habeas petitioner Mayabb to re-exhaust newly created state remedies which were not available when the petition was originally filed pursuant to 28 U.S.C. § 2254.

2. The United States District Court, sitting as an Oklahoma court, committed reversible error by suppressing the confession of Mayabb where it was in conformity with state juvenile law as well as constitutional *Miranda* requirements.

POINT ONE

*WAS THE DISTRICT COURT COMPELLED TO SEND THE PETITIONER BACK TO RE-EXHAUST NEWLY CREATED STATE REMEDIES NOT AVAILABLE WHEN THE PETITION WAS ORIGINALLY FILED PURSUANT TO 28 U.S.C. § 2254?*

The trial court determined that re-exhaustion was not necessary. We affirm. This court's decision in the case of *Lamb v. Brown, supra*, held that the Oklahoma statute defining a delinquent child as a male under 16 years of age or a female under 18 years was unconstitutional. By virtue of that definition, all males over 16 years of age charged with crimes were treated as adults. On the other hand, females be-

---

\* Honorable George Templar, Senior District Judge, District of Kansas, sitting by designation.

1. The petitioner had served approximately ten years in the state prison as of the time of his discharge on habeas corpus writ.

tween the ages of 16 and 18 who were charged with crimes were dealt with as juveniles unless certified, after investigation and hearing, to be triable as adults. Because there was no logical justification for discrimination in the treatment of males and females, this court held § 1101(a) of 10 Okla.Stat. to be unconstitutional.

In the case of *Radcliff v. Anderson, supra*, this court held that the *Lamb* decision should be applied retroactively, in spite of a statement to the contrary in the *Lamb* opinion. We found that the denial of a certification hearing before trial as an adult raised concern for basic fairness and essential justice. 509 F.2d at 1096.

In *Schaffer v. Green*, 496 P.2d 375 (Okl. Crim.App.1972), the Oklahoma Court of Criminal Appeals ruled, in light of our decision in *Lamb*, that 10 Okla.Stat. § 1101A was unconstitutional. On April 4, 1972, the Oklahoma Legislature amended § 1101 to define "child" as all persons below the age of 18, thus eliminating any discrimination in the treatment of males and females. The related § 1101A was repealed. An effort was made by the Oklahoma court in *Dean v. Crisp*, 536 P.2d 961 (Okl.Crim.App.1975), to revive the last preceding statute which contained a constitutional, non-discriminatory definition of "delinquent child." This was found in Compiled Laws of Oklahoma 1909, Chapter 13, Article I, § 594, which provided that all persons under 16 be classified as juveniles while all over 16 were considered adults. The Oklahoma court concluded that until the 1972 amendment to § 1101, certification hearings were not required.

In *Bromley v. Crisp*, 561 F.2d 1351 (10th Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499 (1978), the defendant, while he was 17 and represented by counsel, entered a plea of guilty to a charge of assault and battery with a dangerous weapon. He received a suspended sentence. In March 1974, he plead guilty to two charges of second degree burglary after former conviction of a felony and one charge of robbery with firearms after former conviction of a felony. The sentence was three concurrent 22 year terms. The former conviction premising all three of these recidivist convictions was the assault and battery conviction in 1972 when he was prosecuted as an adult without certification for such treatment. Following the 1974 convictions Bromley sought post conviction relief in the state courts, asserting that the former conviction was invalid under the *Lamb* equal protection holding. He then brought his federal habeas corpus petition, in which his constitutional claim was rejected on the ground that the plea of guilty had waived the prior defects alleged. The appeal in Bromley followed.

The argument by the state on appeal was that the rulings were correct, because the guilty pleas prevented assertion of claims of earlier deprivation of constitutional rights. This court pointed out that although there are a number of cases which hold that where a guilty plea is voluntarily made it precludes subsequent attack on a conviction, the cases of *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) and *Menna v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) hold that the preclusive effects of guilty pleas are not applicable where the constitutional claims go to the power of the state to bring the defendant into court to answer the charge brought against him. This court, however, did not rest its decision on that point, but rather took the narrower position that the specifics and merits of the equal protection claims were considered by the Oklahoma courts. Where that is the case, federal courts in habeas corpus suits should likewise entertain the claims.

In *Bromley v. Crisp*, this court also rejected the view that the reconstruction of state law offered in *Dean v. Crisp, supra*, cured any constitutional problems created by discrimination against males aged 16 to 18. We took notice that girls were, in fact, given preferential treatment before § 1101 was amended, and boys were, in fact, denied equal protection of the law. However, we recognized that a writ of habeas corpus need not be issued by the federal court in every case where a boy aged 16 to 18 had

been tried and convicted as an adult without the benefit of a certification hearing. We found that if the federal habeas court "is clearly convinced that certification would have been made in the state court, the conviction need not be set aside * * *." 561 F.2d at 1357.

In *Bromley* it was also stated that in then-pending federal habeas cases, the district courts should withhold judgment "for a reasonable time to allow the determination to be made in state courts. If the state obtains in the Oklahoma courts a determination that certification would have occurred, the federal district court should deny the writ; if the state court finding is otherwise, the writ should issue." 561 F.2d at 1356, fn. 6. Should no determination be made in the state court, the federal courts were advised to hold hearings "and make the ruling as to whether or not the court is clearly convinced that petitioner would have been certified for trial as an adult * * *." *Id.* We also approved use of the state test, which provides for certifying "such child capable of knowing right from wrong and to be held accountable for his acts." *Id.* *See, Sherfield v. State,* 511 P.2d 598 (Okl.Crim.App.1973).

Based on the *Bromley* decision the trial court here, Judge Cook presiding, issued an order dated March 13, 1978 granting the appellant 120 days in which to obtain a state court determination as to whether defendant would have been certified to stand trial as an adult had a certification hearing been held. On May 23, 1978, however, a judge of the District Court of Oklahoma County entered an order in which he found that the state could not invoke the jurisdiction of that court to review the judgment. On November 13, 1980, a hearing was held in the federal district court to determine whether Mayabb would have been certified to stand trial as an adult. The state presented the testimony of one witness, Officer Richard Mullins of the Oklahoma City Police Department. Mullins was the primary investigator of the underlying murder case here.

When the state attempted to elicit testimony regarding certain statements allegedly made by petitioner Mayabb, counsel for petitioner objected and the suppression question was explored. The petitioner, his mother and his brother testified. The court found that although the officer explained his constitutional rights to the petitioner, as well as to his mother, before questioning petitioner, neither of them could read or write, or understand their rights, and that a knowing, intelligent and voluntary waiver of rights was not made. It was on this basis that the court suppressed the statements. It should be mentioned that the court did not consider the statements for any purpose. An additional piece of evidence was introduced by the state, a file card showing three previous legal incidents involving petitioner. Because the underlying juvenile court records had been destroyed, the information on the card could not be verified, nor could the disposition of any of the charges be determined. The trial court found on the evidence presented that petitioner would not have been certified to stand trial as an adult. Following various post hearing motions, the order issuing the writ of habeas corpus was entered. Petitioner was released from custody on April 20, 1981.

The *Dean v. Crisp, supra,* revival of the last preceding constitutionally valid statute has been overruled by the Oklahoma court in *Edwards v. State,* 591 P.2d 313 (Okl. Crim.App.1979). The *Edwards* opinion held that boys were the victims of unconstitutional discrimination and denial of equal protection. The Oklahoma court also agreed with this court's holding in *Radcliff* that retroactive relief should be granted to boys between 16 and 18 who were prosecuted as adults without the benefit of certification hearings. The *Edwards* order contained the following language:

[T]he (petitioner) must be able to state to the district court some valid reason to believe that certification would have been denied. If he can do this, then he will be entitled to an evidentiary hearing on the question. The state has the burden to prove by a preponderance of the evidence

that waiver of jurisdiction of the Juvenile Court would have occurred had a certification hearing been held.

\* \* \* \* \* \*

If the state can establish that the (petitioner) would have been certified had a certification hearing been held, then his application for post-conviction relief should be denied. If the state cannot carry its burden, then post-conviction relief should be granted and the (petitioner's) convictions should be vacated. *Edwards v. State, supra*, at 321–322.

It should be mentioned that the *Edwards* case was decided after the District Court of Oklahoma County determined in 1978 that it lacked jurisdiction to hold a certification hearing on the state's application, but before the certification hearing was held in the federal district court in 1980.

The important inquiry is whether as a result of the *Edwards* case a new Oklahoma remedy was created which required that an effort to re-exhaust be made by petitioner. In the *Edwards* case, a male who was convicted and sentenced as an adult for a crime committed between the ages of 16 and 18 was held to be entitled to an evidentiary hearing in state court on the certification question, if he can state some valid reason to believe that certification would have been denied.

Petitioner has argued that the remedy provided by the *Edwards* decision is ineffectual because it places the burden on the petitioner to state some reason to believe that certification would have been denied, in addition to the facts that he was 16 to 18 years of age at the time of the crime and was denied a certification hearing, before he will be entitled to a hearing. Additionally, petitioner points to language in *Edwards* which indicates that the state need only prove by a preponderance of the evidence that certification to stand trial as an adult would have occurred. 591 P.2d at 321–322. In *Bromley v. Crisp, supra*, this court has held that if a male 16 to 18 years of age at the time of an offense seeks a remedy based on a failure to hold a certification hearing, the state is then required to prove that certification would have oc-

curred. If the hearing is held in federal court, the court must be "clearly convinced" that certification would have occurred. However, we need not and do not reach the assertion that the *Edwards* remedy is ineffective in this case.

We recognize that in certain circumstances, a supervening change in applicable law does require that re-exhaustion of state remedies occur before a federal court may act upon a habeas petition of a state prisoner. Thus, a supervening change in federal substantive law requires the state courts to be given an opportunity to consider a petitioner's contention in the light of such changes. *Drennon v. Hess*, 642 F.2d 1204 (10th Cir. 1981); *Franklin v. Conway*, 546 F.2d 579 (4th Cir. 1976); *James v. Copinger*, 428 F.2d 235 (4th Cir. 1970).

Changes in state procedural law have also been held to require that a federal court stay habeas proceedings so as to permit re-exhaustion. Cf., *Case v. Nebraska*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965); *James v. Copinger, supra*. The state has relied on *Mabry v. Klimas*, 448 U.S. 444, 100 S.Ct. 2755, 65 L.Ed.2d 897 (1980). The petitioner had been convicted and sentenced in that case under a recidivist statute. On appeal he argued that some of his prior convictions should not have been admitted into evidence. The state supreme court reduced his sentence to the minimum that could have been imposed had the inadmissible convictions been excluded. Thereafter, petitioner sought a writ of habeas corpus in the federal court alleging that his sentencing was unconstitutional and not remedied by the modification on appeal. The state recidivist statute was amended after the petitioner's trial. The Eighth Circuit found that because the amendment, if applicable to the petitioner, would result in a lower sentence, a writ of habeas corpus should issue unless he was resentenced. The Supreme Court reversed, noting that the state courts had never been presented with the argument that the petitioner was entitled to resentencing by virtue of the amended statute. Our analysis

of *Mabry* is that it merely reaffirms the rule that a state prisoner must initially exhaust state remedies before resorting to federal habeas corpus. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). *Mabry* makes it clear that this requirement will continue to apply where an intervening change in state law has given rise to a new theory.

■ The result differs where, as here, there is an intervening change in state substantive law.

> If the change provides an effective state procedure, * * * or a fundamental variation in substantive federal law, the petitioner will generally be required to return to the state courts. If, however, the change is in the substantive state law on the federal issue, federal consideration of the petitioner's claim will generally not be delayed. *Roberts v. LaVallee*, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967). In the latter situation, the state courts already had the opportunity to consider the petitioner's claim, and the goals underpinning the exhaustion doctrine would not be furthered. *Galtieri v. Wainwright*, 582 F.2d 348, 355 (5th Cir. 1978).

In the present case, petitioner presented his claim to the state courts in 1975. The state procedure which petitioner invoked would have afforded an adequate forum for consideration of the legal and factual questions presented. *See* 22 Okla.Stat. § 1080, *et seq.* Probably because of the then controlling state substantive law, the petition was dismissed. The subsequent change in state substantive law did not trigger a re-exhaustion requirement.[2]

In the present case the state courts had an opportunity to consider petitioner's claim, even disregarding the state's request for hearing. The *Edwards* decision made no change in the state post conviction reme-

dy procedure. Rather, *Edwards* altered the substantive law of the state so as to recognize that persons such as petitioner may be entitled to a remedy in certain circumstances.

In *Roberts v. LaVallee*, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967), the Supreme Court held that a similar change in the state substantive law did not give rise to a re-exhaustion requirement. There, an indigent petitioner had requested a free transcript of the testimony of a key state witness rendered at a preliminary hearing. The petitioner asserted his entitlement to such a transcript before his trial, throughout the state appeals process and in state post conviction proceedings. After his application for federal habeas corpus had been filed, the highest state appellate court ruled that denial of free transcripts to indigents is unconstitutional. The Second Circuit held that because the petitioner might now receive the relief he sought in state court, the federal petition ought to be dismissed and re-exhaustion of state remedies should be required. The Supreme Court, however, reversed, holding that repeated applications to state courts are not required in such circumstances. *See also, Francisco v. Gathwright*, 419 U.S. 59, 95 S.Ct. 257, 42 L.Ed.2d 226 (1974); *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *Fay v. Noia*, 372 U.S. 391, 423–424, 83 S.Ct. 822, 840–41, 9 L.Ed.2d 837 (1963); *United States ex rel. Holes v. Mancusi*, 423 F.2d 1137 (2d Cir. 1970).

Accordingly, we conclude that it was not necessary for petitioner to re-exhaust state remedies in light of the *Edwards* decision. We note that in its response to petitioner's complaint and petition, the state conceded that the issues raised had been presented to the Oklahoma courts in post conviction proceedings and that state remedies had been

---

2. Under available Oklahoma procedures, the preferred approach set forth in *Bromley v. Crisp, supra*, at 1356, fn. 6, may be best accomplished by withholding judgment for a reasonable time while the petitioner seeks a state court certification hearing under *Edwards*. In this case, in accordance with our *Bromley* guidelines, the district court withheld judgment to

permit the *state* to seek a certification hearing in state court. Neither the requirement that state remedies be exhausted nor principles of sound judicial administration mandated that the district court delay the proceedings yet again to require the *petitioner* to return to state court after the decision in *Edwards*.

exhausted. Moreover, the state did not urge the trial court to return the case to the state court following the *Edwards* decision. Indeed, counsel for the state expressed satisfaction with the federal forum shortly before the certification hearing began and after the trial court had raised the possibility of requiring re-exhaustion. Our finding is, then, that the trial court acted properly on this issue and we conclude that re-exhaustion was not mandated by applicable law.

### POINT II

*DID THE FEDERAL DISTRICT COURT COMMIT ERROR BY SUPPRESSING THE CONFESSION OF MAYABB?*

It will be recalled that petitioner's statement was taken by an Oklahoma City police officer. The state contends that had the statements been admitted, the trial court would have been required to find that Mayabb would have been certified to stand trial as an adult. The state maintains that under state law, the confession of a child is admissible if the child's parent was present and if the child and parent were advised of their legal rights. *See* 10 Okla.Stat. § 1109(a). The state further argues that under Oklahoma law no waiver of rights need be shown. As to federal law, the appellant asserts that petitioner's plea of guilty precludes any claim in this habeas corpus proceeding that his statements are inadmissible. Alternatively, the state argues that the trial court erred in concluding from the evidence presented that Mayabb's statements were not voluntarily, knowingly and intelligently made.

One of our conclusions is that the evidence supports the trial court's finding that petitioner's statements were not knowingly, voluntarily and intelligently made. The petitioner has argued that the question of the admissibility of his statements is not properly before the court, because the state did not attempt to introduce petitioner's written statement into evidence and because no offer of proof was made after the trial court decided to suppress petitioner's oral statements. Rule 103(a)(2), Federal Rules

of Evidence, provides that error may not be asserted based on exclusion of evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." It would appear that the petitioner's oral statements were made known to the court in substance. We note also that counsel for the state have included in their brief the text of what purports to be the written statement of the accused. As discussed more fully below, the written statement is not part of the record and if the state had wished to make it part of the record, at the very least it should have been formally offered.

The Supreme Court has not yet decided whether the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), apply fully in juvenile proceedings. *Fare v. Michael C.*, 442 U.S. 707, 717, fn. 4, 99 S.Ct. 2560, 2567, fn. 4, 61 L.Ed.2d 197 (1979). It is clear, however, that the privilege against self incrimination does apply in juvenile proceedings. *In Application of Gault*, 387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527 (1967), it was said:

> We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. * * * If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was *not the product of ignorance of rights*, or of adolescent fantasy, fright or despair. (emphasis added)

As the Supreme Court recognized in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), a certification hearing of this type is of "critical importance." Thus, we find that a confession or admission of a juvenile is not admissible in a hearing on waiver of juvenile jurisdiction unless the statement was made voluntarily and with knowledge of constitutional rights. The Oklahoma Court of Criminal

Appeals has so held. The Oklahoma court said:

> When we consider the critical nature of the rights adjudicated at such a hearing, * * * we are compelled to conclude that there is no rational basis for a rule which would permit an illegally obtained confession to be introduced into evidence at a certification hearing when the same confession would be clearly excluded at a delinquency hearing or a criminal trial. * * * We hold that it is the duty of the judge of the juvenile court to deny admission into evidence at a certification hearing those statements of a child obtained in violation of constitutional or statutory rights which are inadmissible in delinquency or criminal proceedings. *J. T. P. v. State*, 544 P.2d 1270, 1276 (Okl.Crim. App.1975).

*See also, C. G. H. v. State*, 580 P.2d 523, 525 (Okl.Crim.App.1978). The Oklahoma courts have given recognition to the proposition that such hearings are of critical importance and have held that confessions are not admissible in such hearings unless there is a knowing and intelligent waiver of the rights to counsel and to remain silent.

■ In the present case, petitioner, his mother and his brother all testified that at the time of his arrest neither petitioner nor his mother could read or write. Petitioner and his mother both testified that they were incapable of understanding a *Miranda*-type warning of legal rights, even if, as Officer Mullins testified, such a warning was read to them. Testimony also showed that neither petitioner nor his mother knew the meaning of words such as "incriminate" and petitioner did not even know what a lawyer was. Following the hearing the trial court ruled as follows:

> Well, from the evidence that has been presented to the court it seems apparent that Mrs. Mayabb and Mr. Paul Mayabb neither could read nor write. No question but that Officer Mullins read to them the document, I don't question his statement there. I have serious doubts though that it had any real meaning to either. It would appear to the court that

it was not a knowledgeable, knowing, understanding waiver, and under this testimony I am going to sustain the objection of counsel as to the confession.

The state argues that the trial court's ruling was based exclusively on a finding that petitioner could not read or write, and that this alone does not render his statements inadmissible. We cannot agree with the state's view of the court's ruling. After reviewing the transcript of the hearing, we are convinced that the trial court could and did find that petitioner and his mother did not comprehend the oral statement of rights. Furthermore, there was testimony to the effect that petitioner requested an explanation and that this was refused, and that petitioner was threatened. Even discounting this evidence on which no express findings were made, we are satisfied that there is ample support in the record for the finding that a voluntary, knowing and intelligent waiver of rights was not made.

In effect the judge stated that he could do nothing other than grant the petition for the writ of habeas corpus for the reason that there was nothing in the record except the card showing petitioner's juvenile court record. In other words, the only evidence that the state offered consisted of oral statements of the accused made to the officers prior to the time the written statement was prepared. The trial court ruled all of this out and rightly so. Inasmuch as it had been reduced to writing there was certainly good reason to exclude the preliminary admissions that led up to the giving of the confession. However, the state at no time offered the written confession and it is not properly in the record. Prior to oral argument in this appeal, the state filed a motion to correct the record, seeking to add three exhibits inadvertently omitted from the record on appeal. This court granted the motion. One of these "exhibits" was petitioner's written statement. The Clerk of the District Court, however, refused to certify the written statement because it had never been made a part of that court's records. It is true that the state delivered the statement to the Clerk of the Court,

who forwarded a copy to this court. However, I can say that no one of the panel has read this statement and should not because it was not made a part of the record. The trial court did not even make a ruling on it. The state should have tendered the statement; at least the tender would have made it a part of the record. In short, there is not a scrap of evidence here that would justify a positive ruling in favor of the state. We read the trial court's conclusory remarks as being, in effect, in the nature of reasons for entering a default judgment against the state.

■ One further point that the state has argued is that petitioner's guilty plea serves as a waiver of any claim that his statements are inadmissible. This, of course, is separate and distinct from the question just considered, namely the failure to admit the confession or the oral admissions. No argument based on the legal effect of the guilty plea was made when the trial court was considering the admissibility of the confession or as a part of the state's motion to reopen. The trial court and the petitioner were at liberty to assume, if the question was considered, that the state had decided not to rely on the guilty plea. It is seldom that we can consider on appeal issues which were not raised in the trial court and we see no legal justification for departing from that rule here.

Our conclusion is that the trial court ruled correctly and in the only way possible in view of the condition of the record and, although we are unenthusiastic about this result, we are constrained to determine the cause on the record which is presented.

For the reasons set forth above we conclude that the judgment granting the writ of habeas corpus must be and is hereby affirmed.

## ON REHEARING

The State of Oklahoma, through the Attorney General, Jan Eric Cartwright, has filed a Petition for Rehearing and Suggestion for Rehearing En Banc. The two points which are emphasized in the motion are *first*, that the state court remedies had not been exhausted. The *second* point is that the federal trial court erred in excluding the admissions and confessions of defendant at the habeas corpus hearing.

We requested the response to the petition for rehearing from counsel for the petitioner, and the matter stands submitted.

### I.

The emphasis here is placed upon the fact that the Oklahoma Court of Criminal Appeals rendered a decision in *Edwards v. State*, 591 P.2d 313 (Okl.Cr.1979), in which it carved out a new state remedy in the Oklahoma courts for petitioners who were claiming entitlement to the retroactive application of a denial of equal protection in juvenile transfers to adult courts. The contention is that in such circumstances the petitioner must re-exhaust state remedies.

The *Edwards* decision was rendered February 14, 1979. For the first time Oklahoma gave recognition to age discrimination contained in the Oklahoma statute. The opinion condemned the practice of treating males over the age of *16 years* as adults and subject to adult sanctions and procedures. Females between the age of *16 and 18 years* were treated as juveniles unless they were certified for trial as adults. Thus, the pre-*Edwards* rule was that males between the ages of 16 and 18 could be tried as adults without certification hearings. Females between 16 and 18 were triable as adults, but only if they were certified following a certification hearing. The *Edwards* court held that this was unconstitutionally discriminatory, in that it was in violation of the equal protection clause of the Fourteenth Amendment and discriminated against males. The court further held that in proceedings to determine whether retroactive relief could be granted an individual who, during the period between age 16 and 18, was transferred to adult court without certification, could obtain an order in state court overturning his conviction only if a finding was made that the individual would not have been certified if a certification hearing had been held. If such an individual could

present such a reason and the state could not establish that the individual would have been certified, then the district court could grant appropriate relief. The remedy itself was narrow but it did wipe out the Oklahoma ruling in *Dean v. Crisp*, 536 P.2d 961 (Okl.Cr.1975). There the Oklahoma court had held that the effect of several federal court rulings condemning the discriminatory procedure was merely to resurrect an early statute which treated both boys and girls under the age of 16 as juveniles, while those beyond the age of 16 were adults. Thus, it denied juvenile status to all children who were above the age of 16 years. *Edwards* overruled *Dean v. Crisp*, supra.

Our decisions in *Lamb v. Brown*, 456 F.2d 18, and *Radcliff v. Anderson*, 509 F.2d 1093, preceded the Oklahoma decision in *Dean v. Crisp*. *Bromley v. Crisp*, 561 F.2d 1351, was subsequent to *Dean v. Crisp*. All of the mentioned decisions recognized the discrimination which the Oklahoma courts were practicing. It was not until *Edwards* overruled *Dean v. Crisp* that there was a recognizable change. It was during the reign of *Dean v. Crisp* that the present habeas corpus proceedings came before the United States District Court for the Eastern District of Oklahoma. Following a preliminary hearing, the then Judge, Joseph W. Morris, gave the petitioner 120 days from the date presented in which to secure a state court determination as to whether the petitioner would have been (in 1970) certified as an adult for state criminal prosecution. Judge Morris at that time stated that the state courts unquestionably are qualified because of their expertise and daily experience to make the decision as to whether adult certification should have occurred. However, on that occasion Judge Morris declared that if the state court determination was not submitted to his court within 120 days from the date, the writ would issue unless an extension of time was given. On June 27, 1978, the then Attorney General, Mr. Derryberry, reported to the court with a written notification of state court action, stating that the Attorney General's office had referred the matter to the District Attorney of Oklahoma County for appropriate action, and that

an application to set a hearing was filed by an Assistant District Attorney. Then, on May 23, 1978, the notification stated, the Honorable Harold Theus, presiding Criminal District Judge, entered an order stating that the District Court of Oklahoma County did not have jurisdiction to review the conviction.

The notification went on to say that pursuant to this court's decision in *Bromley v. Crisp*, 561 F.2d 1351 (10th Cir. 1977), the State (of Oklahoma) was requesting the United States District Court to conduct a hearing to determine whether or not the petitioner would have been certified to stand trial as an adult. The basic impediment at that time was that the Oklahoma decisions refused to recognize the constitutional violation which resulted from the discrimination.

The Oklahoma Attorney General *now* argues that the federal courts failed to take into account the strong public interest in certification which the State of Oklahoma had. This is subject to question, but one thing which was plain was that no remedy was available in Oklahoma courts until *Edwards* was handed down in 1979. Thus, habeas corpus petitions were futile efforts until *Edwards*.

On November 30, 1978, United States District Judge H. Dale Cook, sitting in the Eastern District of Oklahoma, entered an order which recited that acting on the authority of *Bromley v. Crisp*, 561 F.2d 1351, *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 499, 120 days had been granted for determination by the state court as to whether petitioner would have been certified as an adult for other state prosecution. Judge Cook noted that the 120 days for submission of a state court determination had expired and the Oklahoma court had not decided the issue. Accordingly, respondent was ordered to show cause within 20 days why the writ should not be issued forthwith.

The Oklahoma Attorney General responded that in view of the statement of the District Court of Oklahoma County (which

rejected the submission), the State of Oklahoma could not entertain the case because of a lack of jurisdiction. The Attorney General continued: "It is submitted that only the defendant in a criminal action may petition the state district court for a review of the state court conviction. Thus, the failure of petitioner to invoke the jurisdiction of the district court and obtain a state court ruling as to whether he would have been certified should not preclude the State of Oklahoma from petitioning this court (the federal court) for a hearing to be conducted pursuant to the guidelines of *Bromley v. Crisp*, * * *." The response continued: "As reflected in *Bromley, supra,* in note 6 at page 1356, the federal district court may have the hearing and make a ruling as to whether or not the petitioner would have been certified for trial as an adult if the state court fails to make such a ruling." The Attorney General suggested that the federal court should conduct the hearing to determine whether or not the petitioner would have been certified for trial as an adult.

This is not the situation, as suggested in the motion for rehearing, that an unauthorized assistant attorney general expressed satisfaction in having the federal court decide the issue. Assistants act on behalf of the Attorney General. The Attorney General acknowledged that the State of Oklahoma was unable to invoke the jurisdiction of the state court. The Attorney General stated that the federal courts should determine the crucial issue whether, had it been considered ten years before, a certification to adult court would have issued.

Subsequent to the proceedings that are described above the decision of the Oklahoma Court of Criminal Appeals in *Edwards v. State* was handed down. Our decision in *Bromley v. Crisp, supra,* had recognized that in then-pending habeas cases the federal district court should withhold judgment for a reasonable time to allow the determination to be made in the state courts. If the state obtained a determination that certification would have occurred in the Oklahoma courts, federal district courts should deny the writ; if the state court found otherwise, the writ should issue. 561 F.2d at 1356, fn. 6. In the event no determination was made in the state courts, however, the federal courts were advised to hold hearings "and make the ruling as to whether or not the court is clearly convinced that the petitioner would have been certified for trial as an adult * * *." *Id.* This was the setting when Judges Morris and Cook sought to obtain a ruling from the state district court, or failing that, to proceed with the case. No state hearing was either forthcoming or likely and so Judge Cook, with the consent and approval of the Oklahoma Attorney General, proceeded to hear the issue as best he could. The failure of the Attorney General to present a showing is not surprising.

Efforts had been made by the petitioner to submit this remedy in the state court. The petitioner had been denied relief in the Oklahoma district and appeals courts. The federal court submission was not likely to succeed, but the Oklahoma court showed no enthusiasm for having the case. In view of the happenings, it is difficult to see how the State of Oklahoma can now claim that as a result of the *Edwards* decision there must be further pursuit of a state court decision.

We are not saying that there was a waiver by the state. We are saying that the defendant made a bona fide and adequate effort to pursue and exhaust state remedies, and in view of the action taken by the state, it should not be heard to say that the proceedings were inadequate because of failure to re-exhaust his remedies.

We are aware that supervening changes in federal *substantive* law require that the state court be given an opportunity to consider petitioner's contention in light of such changes. *Drennon v. Hess,* 642 F.2d 1204 (10th Cir. 1981); *Franklin v. Conway,* 546 F.2d 579 (4th Cir. 1976); *James v. Copinger,* 428 F.2d 235 (4th Cir. 1970).

Supervening changes in state *procedural* law have also been held to require that a federal court stay habeas corpus in order to allow re-exhaustion. *Cf. Case v. Nebraska,* 381 U.S. 336 (1965). *See James v. Copinger, supra.*

The state relies on *Mabry v. Klimas,* 448 U.S. 444, 100 S.Ct. 2755, 65 L.Ed.2d 897

(1980). There petitioner had been convicted and sentenced under a recidivist statute. On appeal he successfully argued that some of his prior convictions should not have been admitted into evidence. The State Supreme Court reduced his sentence to the minimum had the inadmissible convictions been excluded. The petitioner there was not satisfied. He filed a habeas corpus in federal court, alleging that the entire sentencing was unconstitutional. The Supreme Court held that he had never exhausted his remedy as to the invalidity of the sentence as a whole. Thus, *Mabry* is not applicable here because no such problem exists. The state was given ample opportunity to consider and decide the case. *Mabry* is not a case of re-exhaustion.

The case of *Roberts v. LaVallee*, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967) bears a closer similarity than anything that is presented by the state. Petitioner in that case had requested a free transcript of the testimony of the key state witness rendered at the preliminary hearing. At every level he asserted his entitlement, through the trial and through post-conviction proceedings. The Second Circuit held that after the highest state court had ruled that denial of free transcripts to indigents was unconstitutional, petitioner might now receive relief in the state court, and that the federal petition ought to be dismissed and re-exhaustion should be required. The Supreme Court reversed, holding that repeated applications to state courts are not required in such circumstances. We say that the case here is governed by *Roberts v. LaVallee*. It is not seriously disputed that there was exhaustion in this case at the outset. The only point that the state now makes is that *Edwards* brought about a procedural change requiring re-exhaustion. We disagree in view of the peculiar circumstances presented. First Oklahoma refused to recognize the constitutional violation for many years. Meanwhile, the Attorney General, in effect, conceded that no action was to be expected from the Oklahoma courts and approved a hearing by the federal court. Further exhaustion was likely to prove futile. The Attorney General recognized this fact, as shown by his suggesting that the federal court hear the issue.

## II.

The next contention is that the oral and written statements of the petitioner should have been received in evidence at the habeas hearing to determine whether a certification to the district court would have occurred ten years before. These statements constituted the only evidence offered by the state in the hearing before Judge Cook. The only witness on behalf of the state was the officer who conducted the investigation and who questioned the petitioner Mayabb. His testimony was devoted to the circumstances surrounding the taking of the statements, and an effort was made by the Assistant Attorney General to introduce all the oral statements that the accused had given, together with the written statement. Although the written statement was not actually tendered in evidence, the court rejected it, nevertheless, and did so on the ground that Mayabb had not had a lawyer and seemingly did not understand his rights, even though a *Miranda* warning was given by Sgt. Mullins, who conducted the questioning over a long period of time. The testimony from Mayabb was that he did not understand what the confession was; that he did not understand the wording, including the function of a lawyer, as he was unable to read. He also said that no one read the document to him. He testified that he was seventeen and was a seventh grade drop-out. He denied that he understood the words "right to counsel" nor did he understand the meaning of the word "incriminate"; he never had an attorney, nor had he ever talked to one. His mother testified that she was unable to read or write, and that his father was unable to read or write. She indicated that he did not know what he was signing.

The legal basis for the objection at this collateral hearing was the critical importance of the certification hearing to the juvenile. The conclusiveness of this hearing justified the objection to its admission and its exclusion, even though the issue at stake was not guilt or innocence. The authority relied on was *Application of Gault*,

387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527; also *J. T. P. v. State*, 544 P.2d 1270, 1276.

Finally, the only other evidence tendered by the state was the card which purported to show the juvenile court record of the petitioner. The contents of the record were not revealed. The purpose was to show that the records existed.

The Assistant Attorney General, with commendable candor, acknowledged that the evidence bearing on the question of the admissibility of the statement was that the entries on the card could not be verified because the files were shown to have been destroyed. It was said by the Attorney General that "those two (the statement and the card) and I would have to agree with Mr. Gilbert, attorney for the petitioner are very scant reasons for this court to find that Mr. Mayabb would have been certified as an adult, in light of the fact that there are certain due process guarantees which Mr. Mayabb is afforded when he is a juvenile." An additional statement was made that not much evidence existed to show that he would have been certified; that the district court records had been destroyed, this case having been held ten years before.

It is not surprising that Judge Cook rejected the statements. The state was relying on an invalid confession and invalid admissions as its only evidence in seeking to establish that Mayabb would have been certified. Granted that confessions are generally offered to establish guilt, it does not follow that an invalid confession should be received to justify transfer to district court ten years afterward.

\*   \*   \*   \*   \*   \*

A further point was tacked on by the Attorney General in the motion for rehearing which was not expressly raised at the hearing. That was that the defendant's plea of guilty barred him from presenting a collateral attack upon the conviction. This has been discussed in the opinion. It is rendered inadequate by the fact there was not a counseled, intelligent, deliberate understanding waiver of his right to appeal such as to justify the withholding of federal habeas corpus relief. Nor is this a case in which there has been deliberate by-pass of the orderly procedure of state courts, whereby the petitioner · has forfeited his state court remedies. *Cf. Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Indeed, it is a far cry from anything that faintly resembles any manipulation by the petitioner. Although, as pointed out in the opinion, the state asserts that petitioner had the assistance of counsel in connection with his plea of guilty, the record fails to support this. *See Meena v. New York*, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), including the footnotes on pages 62 and 63, and *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

We do not find fault with the Attorney General's motion for rehearing because of the fact that it resembles a brief more than a petition for rehearing, for it does make as strong a showing as can be made. However, it does not provide a basis for granting a rehearing.

We, therefore, determine that it should be, and it is hereby, denied.